## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

<table>
<tr><td>

ADANA INVESTING, INC.,

               Plaintiff,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO ADVISORS, LLC; BENJAMIN
RAFAEL; HERNAN BERMUDEZ; and
PAUL ZOCH;

               Defendants.

</td><td>

CASE NO.:

</td></tr>
</table>

### THIRD PARTY EDMUND ROSS MARROSO, JR.'s
### MOTION TO QUASH, FOR PROTECTIVE ORDER, AND OBJECTIONS
### DIRECTED TO SUBPOENA BY ADANA INVESTING, INC.

Movant, Edmund Ross Marroso, Jr., ("Marroso"), pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3)(A) and (B), moves to quash, or for a protective order, and objects to the subpoena issued by the Plaintiff Adana Investing, Inc., in the lawsuit now pending in the United States District Court for the Southern District of Florida styled *Adana Investing, Inc. v. Wells Fargo Bank, et al.,* Case No. 16-cv-21562 ("*Wells Fargo Case*").

The *Wells Fargo Case* arises from a series of transactions between Adana and several entities and individuals, which is the subject of a separate lawsuit in the Southern District of Florida styled *Adana Investing, Inc. v. Forrest Capital Partners, Inc., et al.,* Case No. 15-cv-24038 ("*Forrest Capital Partners Case*").[1]  Mr. Marroso is not a party to

---

[1]      On September 14, 2016, the Court in the *Forrest Capital Case* granted the Defendants' Motion to Compel Arbitration, Stay Discovery, and Stay Proceedings..  The

either lawsuit, but has been served with subpoenas in both cases requesting a massive amount of correspondence and communications with all of the principal actors in both cases – subpoenas which are nearly exact duplicates of discovery sought by Adana against the actual parties in those cases.[2]

As shown in Mr. Marroso's sworn declaration, attached as Exhibit 1, compliance with the subpoenas would impose an unreasonable burden on him in terms of time and expense, which would entirely outweigh the benefit to the Plaintiff, who has every ability to obtain the same records from the other individuals and entities, and who are the principals in the transactions giving rise to both lawsuits. Mr. Marroso's declaration shows that in order to produce the records described in the subpoena, he would be required to expend some 200 hours of labor to compile and review the 20,000 emails with potential attachments in the digital file size of approximately 30 gigabytes of information, including 10,000 pages of other materials.[3] Enforcement of this subpoena on Mr.

---

Defendants' Motion is available at Docket No. 75 in that case, but the Court has not yet entered its written order as of the time of this filing.   The Order Compelling Arbitration underscores the importance of the relief Mr. Marroso seeks here, because Adana will be required to obtain whatever discovery it is allowed in the arbitration process against those defendants, but should not be allowed to circumvent a mandatory arbitration to obtain records via subpoena from a non-party like Mr. Marroso.

[2]      In this case, Adana has issued six other subpoenas seeking the same fifty-plus categories of information to the following entities and individuals:   Forrest Capital Partners, Inc.; Forrest Capital and Co., LLC; Benjamin McConley; Jason Van Eman; The JV Group, LLC; WVP Holding, Inc.   *See* Plaintiff's Motion to Compel Non-Parties' Compliance with Subpoena's Duces Tecum in *Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, et al., Case No. 15-21562 in the United States District Court for the Southern District of Florida, Docket No. 76, Exhibits 76-1 through 76-6.   The only difference is that on the list of 23 interlocutors for Items 1-8, number "viii" on those subpoenas list "Ross Marroso," whereas number "viii" on items 1-8 of Mr. Marroso's subpoena is "Jason Van Eman."   These are attached to Mr. Marroso's declaration as Exhibits 1-D and 1-E.

[3]      Mr. Marroso's entire declaration, Exhibit 1 with exhibits, is incorporated herein by reference, but will not be repeated in this Motion for the sake of brevity.

Marroso would clearly impose an undue burden on him. Consequently, pursuant to Fed.R.Civ.P. 45(d)(3)(A), this Court "is required" to quash or modify a subpoena that "subjects a person to an undue burden."

According to this Court:

> Rule 45(c) of the Federal Rules of Civil Procedure permits a party to a suit to seek discovery through a subpoena to a nonparty. Upon a timely motion, the Court must quash a subpoena that "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3) (A). Whether a burden is undue requires weighing "the likely relevance of the requested material ... against the burden . . . of producing the material." *EEOC v. Ford Motor Credit Co.,* 26 F.3d 44, 47 (6th Cir.1994). Courts also consider one's status as a nonparty to be a significant factor in the undue-burden analysis. *See, e.g., N.C. Right to Life, Inc. v. Leake,* 231 F.R.D. 49, 51 (D.D.C.2005).

*In re Smirman,* 267 F.R.D. 221, 223 (E.D. Mich. 2010). *See also Tropical Marketing & Consulting, LLC v. Glock, Inc.,* 2012 WL 5431002, *2 (M.D. Fla. Nov. 7, 2012)(Under former rule, 45(c)(3)(A), the court "must quash or modify a subpoena that . . . subjects a person to undue burden.").

Similarly, in *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,* 300 F.R.D. 406 (C.D. Cal. 2014), the court held:

> "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry. *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998); *see also Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2,* 197 F.3d 922, 927 (8th Cir.1999) (quoting same); *Dart Industries Co., Inc. v. Westwood Chemical Co.,* 649 F.2d 646 (9th Cir.1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery."); *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.").

*Id.,* at 409.

Although a "nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted, *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010), "[g]enerally, subpoenas under Rule 45 of the Federal Rules of Civil Procedure are not meant to serve as discovery tools among parties." *Swarthout v. Thomas LaNore, P.A.*, 2009 WL 1770540 (W.D. Mich. June 18, 2009). In fact, it is widely held that courts are reluctant to require a non-party to provide discovery that can be produced by a party or obtained from another source.

> Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party. Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Rocky Mountain Medical Management*, 2013 WL 6446704, at *4 (D.Idaho Dec. 5, 2013); *see also Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Brown v. City of Syracuse*, 648 F.Supp.2d 461, 466 (N.D.N.Y.2009) (when balancing hardships between requesting party and non-party, court should consider whether there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus Medical, LLC*, 2011 WL 6415540, at *6 (S.D.Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests.").

*McFerran Home Furnishings, Inc.*, 300 F.R.D. at 409-410. The information sought from Mr. Marroso can be obtained from other sources, including especially WVP, WVP Holding, and Van Eman. Mr. Marroso has undoubtedly met his burden here to require the subpoena to be quashed or have a protective order entered.

Moreover, Rule 45(d)(1) provides: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Enviropak Corp. v. Zenfinty Capital, LLC*, 2014 WL 4715384, *3 (E.D. Mo. Sept. 22, 2014). In forcing Mr. Marroso to

respond to this subpoena, Adana has done just the opposite.  As Mr. Marroso's declaration makes clear, all records subpoenaed would also be produced by WVP and Jason Van Eman, who are not only the principals for whom he consulted, but parties to the Forrest Capital Case Rule and recipients of nearly identical subpoenas in this case: "[E]verything in my possession or control that is relevant to the Plaintiff's complaint would also be produced by WVP, WVP Holding, and Van Eman..  Exhibit 1, paragraph 9.   Consequently, the information sought by Adana from Mr. Marroso would be duplicative and unreasonably cumulative, and subject to a protective order under Rule 26(b)(2)(C), which provides:  "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . .   (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."

Finally, as shown in his declaration, Mr. Marroso is a party to a consultancy agreement with two of the named defendants in the *Forrest Capital Case*,  WeatherVane Productions, Inc. ("WVP"), and Jason Van Eman ("Van Eman"), which specifically provides that all of the information he obtained and which is subject to the subpoena is proprietary information which he may not "at any time or in any manner, either directly or indirectly, . . . divulge, disclose, or communicate in any manner . . . to any third party without the prior written consent" of WVP or Van Eman.  Marroso Declaration, Exhibit 1, paragraph 14.  Consequently, pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i) this Court "may quash or modify the subpoena if it requires . . . disclosing a trade secret or other

confidential research, development, or commercial information." *Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462 (D.S.D. 2011).

WHEREFORE, Movant Edmund Ross Marroso, Jr. respectfully moves for an Order quashing or protecting him from having to further respond or comply with Adana's subpoena in this case.

Respectfully submitted,


_____/s/_  Ann Marie Pervan_____

Ann Marie Pervan, Esq.
Bar No. P45213
Keller and Avadenka, P.C.
2242 S. Telegraph, Suite 100
Bloomfield Hills, MI  48302
Tel. 248 335 9266
Fax 248 335 6128
annmarie@kellerandavadenka.com

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ADANA INVESTING, INC.,

                Plaintiff,

vs.                                     CASE NO.:

WELLS FARGO BANK, N.A.; WELLS
FARGO ADVISORS, LLC; BENJAMIN
RAFAEL; HERNAN BERMUDEZ; and
PAUL ZOCH;

                Defendants.

## DECLARATION OF EDMUND ROSS MARROSO, JR.

    I, Edmund Ross Marroso, Jr., make the following Declaration, in support of my Motion to Quash, for Protective Order, and Objections Directed to the Subpoena by Adana Investing, Inc.

    1.    My name is Edmund Ross Marroso.  I reside in Brighton, Michigan.  On or about August 24, 2016, my father, Edmund Ross Marroso, Sr., was served with two subpoenas to produce records in the following lawsuits: *Adana Investing, Inc. v. Forrest Capital Partners, Inc., et al.*, Case No. 15-cv-24038 ("*Forrest Capital Case*"), and *Adana Investing, Inc. v. Wells Fargo Bank, et al.,* Case No. 16-cv-21562 ("*Wells Fargo Case*"). Those subpoenas, issued by the Plaintiff Adana Investments, Inc. ("Adana"), are attached to this Declaration as Exhibits 1A and 1B.

    2.    The lawsuits allege that they arise out of failed business dealings between Adana and Forrest Capital Partners, Inc., Forrest Capital and Co., LLC, Weathervane Productions, Inc., WVP Holding, LLC, to finance the production and distribution of

motion pictures. In the *Forrest Capital Case*, Adana named the above four entities, as well as Benjamin McConley, President of Forrest Capital Partners, Inc. and Managing Member of Forrest Capital and Co., LLC, and Jason Van Eman, President of Weathervane Productions, Inc., and Member of WVP Holding, LLC, as defendants.

3.     The lawsuits also allege that the failed projects involved financing provided by Wells Fargo Bank, N.A., and Wells Fargo Advisors, LLC. In the *Wells Fargo Case*, Adana named those two entities, as well as employees Benjamin Rafael, Herman Bermudez, and Paul Zoch, as defendants.

4.     I served as a consultant to Weathervane Productions, Inc. in connection with the transactions which generally underlie the Adana litigation. My role is evidenced in the "Consulting Agreement – WeatherVane & Edmund Ross Marroso Jr., February 5, 2015" attached hereto as Exhibit 1C. As is stated in the Consulting Agreement, my role with WeatherVane was "assisting with the facilitation and development of various projects/ventures and the facilitation of investments into these projects and ventures directly or indirectly via WVP and its financial partner Forrest Capital Partners (FCP) and its principle (sic) Ben McConley." My role with Adana was assisting WVP employees in explaining the WVP financial offering and negotiating terms and conditions of WVP's involvement in business ventures. Once contracts were signed, I had no role in the handling of or transfer of money. In the matter of Adana and Forrest Capital, et al., I have no knowledge of any "fraudulent conduct." No fraudulent action or knowledge of any fraudulent action by me is alleged in either complaint, and I am not named as a defendant in either the *Forrest Capital Case* or the *Wells Fargo Case*. Indeed, I would have earned a substantial amount of money if the funding materialized.

2

5.    In addition to being a consultant to WVP, I am also a "member" of WVP Holding, LLC.  WVP Holding, LLC is a named defendant in the *Forrest Capital Case*. My role in WVP Holding, LLC was limited to creating the entity and executing a small number of documents as directed by Adana as a condition of doing business.  I had no control or access to any of WVP Holding's bank accounts, bank statements, checkbooks, or other assets.   I never received any bank statement or financial report for WVP Holding, LLC.  WVP Holding placed a bank account D.A.C.A. on all accounts related to this case with instructions that all monies received go to Adana automatically.  Further, I was informed by Jason Van Eman that no WVP Holding's account had ever received capital of any kind beyond the initial deposit as required by the bank to open the accounts, a total of $300.00 -- $100,00 each for three accounts the monies were deposited by WVP to the best of my knowledge.   Neither I nor WVP Holding's ever received nor was ever in control of any capital provided by Adana at any time.

6.    As shown on Exhibit 1A, the subpoena issued by Adana in this case (the *Wells Fargo Case*), is extremely broad -- seeking over fifty-five (55) numbered categories of documents.   The first eight (8) numbered categories request all communications to and from me "related to or regarding" the following subjects -- Adana and Adana's principals and agents; the films by general reference that Adana and FCP and WVP were working; film financing; the films that Adana and FCP and WVP were working on, by name -- "Miller," "Buzbee," "Superhuman," "Soral," -- <u>and</u> that were exchanged with the following twenty-two (22) entities and individuals:

    i.    Forrest Capital Partners
    ii.   Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.   WVP Holdings

3

      v.  The JV Group
     vi.  Capital B
    vii.  Benjamin McConley
   viii.  Jason Van Eman
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii.  Zoch
   xiii.  Rafael
   xiv.  Bermudez
    xv.  Aaron McConley
   xvi.  Livia McConley
  xvii.  Adam Falcoff
   xix.  Barltlett
    xx.  Alastair Burlingham
   xxi.  Lee Vandermolen
  xxii.  Vandermolen Films

7.   Adana's subpoena to me in this case <u>also</u> requests forty-seven (47) additional numbered categories of documents "relating to or regarding" the following:   Bridging Facility Agreements dated May 15, June 22, and July 13, 2015; and Funding Agreements dated May 15, June 22, and July 13, 2015; Wells Fargo employees Zoch, Bermudez, and Rafael; communications with Wells Fargo Bank related to all accounts in the names of the corporate entities and named individuals defendants in both the *Wells Fargo Case* and the *Forrest Capital Case,* all communications with Adana principals and agents (by name), all documents and communications related to "my" use of loan proceeds provided by Adana under the May 15, 2015, June 22, 2015, and July 13, 2015 Bridging Facility Agreements, and numerous other requests relating to payments or transfers of money to the corporate entities or individuals named as defendants in both lawsuits, my tax returns for 2011, 2012, 2013, 2014, and 2015, and other categories of documents.[1]

---

[1]   As noted, I never received nor was in control of any funds provided by Adana.

8.    In this case, Adana has issued six substantially identical subpoenas seeking the same fifty-five (55) categories of information to the following entities and individuals:    Forrest Capital Partners, Inc.; Forrest Capital and Co., LLC; Benjamin McConley; Jason Van Eman; The JV Group, LLC; WVP Holding, Inc.  I have attached two of those subpoenas to this Declaration as examples, i.e. the ones served on Jason Van Eman and WVP Holding, Exhibits 1-D and 1-E.

9.    All of the records in my possession that are responsive to the subpoena, other than my personal tax information, would have been received or sent in my capacity as a consultant to WeatherVane Productions, Inc. ("WVP").    I am not aware of any correspondence or communications that I sent or received on behalf of WVP Holding, LLC, *per se*.  In other words, everything in my possession or control that is relevant to the Plaintiff's complaint would also be produced by WVP, WVP Holding,  and Jason Van Eman.

10.    It would impose an extreme burden of time and financial expense if I were required to provide the records listed in the subpoena.   The subpoena calls for approximately 20,000 emails with potential attachments in the digital file size of approximately 30 gigabytes of information spanning 5 years over 2 email addresses -- a WVP email address, and my personal G-mail address. (Many of the emails I would have to retrieve would be duplicative, because it was and is very common for people to send me emails to both my WVP E-mail with a copy to my personal G-mail account.) Adana's subpoena also calls for several hundred megabytes of additional digital files containing contracts, contract drafts, movie scripts, budgets, Executive summaries and related overview documentation of potential investment projects.  This would yield

5

approximately 10,000 pages of material, much of which is subject to separate confidentially (NDA) agreements, i.e. unrelated to Adana, and have no link to this case, except that they might contain discussions of the WVP/FCP funding model and thus be responsive to Subpoena Item No. 3.

11.   To gather and produce the documents listed on the subpoena, I estimate that it would require at least 200 hours of my time, not counting the time required to organize and present the records.  First, to aggregate the G-mail emails, I estimate forty (40) hours due to a service I was able to obtain from Google to give me a "dump" of all my emails. If I can utilize sorting filters to attempt to obtain a more focused 'dump" the 40 hour estimate might be reduced, not including the Google server time to deliver the downloadable files, but that isn't guaranteed.  Once I get the "dump," I estimate it would take at least eight (8) hours to aggregate the emails, and then ten (10) more to review them to ensure they are responsive and not subject to any privilege.

12.   My corporate WVP email appears to have less functionality to it and may require a single printing of each email.   The vast majority of the emails to and from my WVP email address fall under the subpoena and comprise approximately 15,000 emails. I have no identified way to print or download them in bulk, so this could take a minimum of 125 hours to compile, assuming 30 seconds per email to review and print.  Assuming a longer period of time to review them, say 45 second each, it would take approximately 190 hours. Each additional 15 seconds of review time adds an additional 62 hours of labor for all of the records requested.

13.   I am a small business person and do not have any staff working for me that I can delegate this work to, so the effort would not only be exceedingly burdensome, but

preclude me from serving my other business responsibilities, and cost money in lost time and actual expense, which would be very harmful to my business and my family.

14.     My consulting agreement with WVP also provides that all of the information he obtained and which is subject to the subpoena is proprietary information which he may not "at any time or in any manner, either directly or indirectly, . . . divulge, disclose, or communicate in any manner . . . to any third party without the prior written consent" of WVP or Van Eman.   Exhibit 1C.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  September 16, 2016            Edmund Ross Marroso, Jr.

# EXHIBIT 1-A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| ADANA INVESTING, INC. | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No.  1:16-cv-21562-UNGARO |
| WELLS FARGO BANK, N.A., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Edmund Ross Marroso, Jr.
                     8432 Woodland Shore Drive, Brighton, MI 48114
                         *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| | |
|---|---|
| Place: The Law Offices of Jay Y. Mandel, PLLC<br>      535 Griswold Street, Suite 1000<br>      Detroit, MI 48226 | Date and Time:<br>    08/24/2016 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      08/08/2016

*CLERK OF COURT*

                                     OR      *Dana D. Couriel*

           *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ADANA INVESTING, INC.                       , who issues or requests this subpoena, are:
John D. Couriel, 2 South Biscayne Boulevard, 35th fl., Miami, FL 33131, john.couriel@kobrekim.com, (305) 967-6115

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

### I.    Definitions

1.    All words, terms, and phrases not specifically defined in this Exhibit A are to be given their normal and customary meaning in the context in which they are used herein.

2.    "Adana Investing" means Adana Investing, Inc. and any of its subsidiaries, affiliates, member firms, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

3.    "And" as well as "or" shall be construed both conjunctively and disjunctively as necessary in order to bring within the scope of the requests all responses which might otherwise be construed outside its scope.

4.    "Any," "all," and "each" shall each be construed as meaning any, all, and each.

5.    "Asset" means any tangible or intangible item of economic value located anywhere in the world in any form, including without limitation, and whether prepaid or deferred, any cash, income, securities, bank accounts, line of credit, accounts receivable, gifts, trademarks, patents, copyrights, goodwill, personal property, or any interest in any real property, including in any leasehold, or any ownership, membership, credit or other interest in, whether direct or indirect or legal or equitable, or any power, control or discretion otherwise with respect to the disposition of, any asset of any person.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including, without limitation, all discussions, conversations, negotiations, meetings, telephone conversations, voicemails, letters, memoranda, notes, e-mails, text messages, iMessages, instant messages (*e.g.*, through Skype, Microsoft Lync, or any other

messaging program), or messages delivered through social media (*e.g.* Twitter and Facebook), and all other manner or means of transmittal of information, whether oral or written.

7.     "Concerning," "relating to," "related to," and "referring to" are used, for the purposes of these requests, as equivalent terms, each including the others.

8.     "Forrest Capital Parties" means Forrest Capital Partners, Inc., Forrest Capital and Co LLC, Weathervane Productions, Inc., WVP Holding, Inc., The JV Group, Capital B, LLC, Jason Van Eman, Benjamin Forrest McConley, and Ross Marroso as herein defined.

9.     "Document" includes, without limitation, electronically stored information ("ESI") (as defined below); all drafts; communications; correspondence; electronic mail; social media (*e.g.*, Twitter and Facebook) messages or "posts"; spreadsheets or accounting ledgers; calendars; memoranda; records; client lists; reports; books; reports and/or summaries of conversations or interviews; diaries; journals; notebooks; graphs; charts; diagrams; tables; photographs; recordings; audio and video tapes; microfilms; minutes, summaries, reports and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or other notes; checks, front and back; check vouchers, check stubs or receipts; tape data sheets, data processing cards or discs or any other written, printed, typewritten or otherwise recorded matter, however produced, reproduced, whether or not now in existence; and any paper or writing including files, contracts, correspondence, telegrams, agreements, letters, notes, manuals, employee handbooks, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after translation by You into a reasonably usable form. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. Where the electronic and hard copy versions

of any document are separate documents per this definition, both the electronic and hard copy versions should be produced.

10.    Electronically stored information ("ESI") includes without limitation:

    a.    information that is generated, received, processed, and recorded by computers and other electronic devices including, without limitation, voicemail, electronic mail, and facsimiles;

    b.    internal or external web sites;

    c.    output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, chat, instant message or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment;

    d.    activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as but not limited to a personal digital assistant, smart phone or tablet and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein; and

    e.    information, messages, or "posts" transmitted through, posted to, or stored on any social media website, including Facebook, Twitter, Linked In, XboxLive,

Foursquare, Gowalla, MySpace, Windows Live Spaces, Instagram, and Pinterest.

11.     "Including" has its standard meaning and also means "including, but not limited to" and "including, without limitation."

12.     "Aaron McConley" means Aaron McConley and anyone acting for or on his behalf.

13.     "Adam Falcoff" means Adam Falcoff and anyone acting for or on his behalf.

14.     "Alastair Burlingham" means Alastair Burlingham and anyone acting for or on his behalf.

15.     "Aldamisa" means Aldamisa Releasing, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

16.     "Arvest Bank" means Arvest Bank and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

17.     "Barlett" means Robert Barlett and anyone acting for or on his behalf.

18.     "Bermudez" means Hernan Bermudez and anyone acting for or on his behalf.

19.     "BSFG" means BSFG V1, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

20.     "Buzbee" means Anthony G. Buzbee and anyone acting for or on his behalf.

21.　"Capital B" means Capital B, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

22.　"Forrest Capital Partners" means Forrest Capital Partners, Inc. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

23.　"Forrest Capital and Co" means Forrest Capital and Co and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

24.　"Vandermolen" means Lee Vandermolen and anyone acting for or his behalf.

25.　"Livia McConley" means Livia McConley and anyone acting for or on her behalf.

26.　"London Town Pic" means London Town Pic Limited and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

27.　"McConley" means Benjamin McConley and anyone acting for or on his behalf.

28.　"Miller" means Dane Miller and anyone acting for or on his behalf.

29.　"Soral" means Soral, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf, including, without limitation, Dan Koetting and Carolyn Paul.

30.　"Subject Films" means the films presently or formerly known as *Capitive, IMAX Asteroids, Royal Ice, London Town, Jane Got a Gun, Urge,* and *Grief Camp,* and referenced in the Funding Agreements attached hereto as Ex. Nos. 2, 4, and 6.

5

31.    "Superhuman" means Superhuman International Pty Ltd and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

32.    "Rafael" means Benjamin Rafael and anyone acting for or on his behalf.

33.    "Rossi" means Richard Rossi and anyone acting for or on his behalf.

34.    "Ross Marroso" means Edmund Ross Marroso, Jr. and anyone acting for or on his behalf.

35.    "The JV Group" means The JV Group LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

36.    "Van Eman" means Jason Van Eman, and anyone acting for or on his behalf.

37.    "Vandermolen Films" means Vandermolen Films, Ltd. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

38.    "Weathervane" means Weathervane Productions, Inc., and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

39.    "Wells Fargo Advisors" means Wells Fargo Advisors and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

40.    "Wells Fargo" means Wells Fargo Bank, N.A. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

6

41.    "WVP Holding" means WVP Holding, LLC, and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

42.    "Zoch" means Paul Zoch and anyone acting for or on his behalf.

43.    "Relevant Period" refers to January 1, 2010 to the present.

44.    "You" and "Your" refers to Edmund Ross Morroso, Jr., and anyone acting for or on his behalf.

## II. Instructions

1.   The singular of any term shall include its plural, and vice-versa.

2.   Unless otherwise specified, the requests in Section III below require the production of all responsive Documents and Communications.

3.   These requests are continuing in nature, and all responsive Documents and Communications that are created or obtained subsequent to a previous production shall be produced forthwith.

4.   Unless otherwise specified, each paragraph and subparagraph hereof and the Definitions herein are to be construed independently and not by or with reference to any other paragraph or subparagraph or Definition herein for the purposes of limiting the scope of any particular request or the subject matter thereof.

5.   All Documents and Communications produced in response to this request shall either (a) be organized and labeled to correspond with the number of the request to which the Documents and Communications are responsive, or (b) be produced as they are kept in the usual course of business and shall be presented in the file folder, envelope, or other container in which the Documents and Communications are maintained.  If Documents and Communications are

maintained electronically, they shall be produced in native file format with all associated metadata.

      6.  If a Document or Communication is redacted or not produced on the ground that it is privileged and therefore not subject to disclosure, a log containing the following information must be supplied for each:

          a.  the nature of the privilege being claimed; and

          b.  for Documents and ESI, other such information as is sufficient to identify the Document, including, where applicable, the type of Document, the subject matter, the date of the Document (and, in the case of e-mails, the time of transmission), the author(s) of the Document, the recipient(s) of the Document, the identity of any person who had an opportunity to review such Document and, where not apparent, the relationship of the author and the addressee to each other.

      7.  Each Document and Communication requested herein shall be produced in its entirety without deletion, redaction or exclusions, regardless of whether You consider the entire Document or Communication relevant or responsive; if You have redacted any portion of the Document or Communication, stamp the word "REDACTED" beside the redacted information on each page of the Document or Communication which You have redacted; any redactions to Documents or Communications produced should be identified on a privilege log in accordance with instruction 5.

      8.  All Documents and Communications (unless they are electronic documents produced in native format) should be "Bates" numbered sequentially with a unique number on each page, and with a prefix identifying the party producing the document.

9. If any of the below-requests cannot be responded to in full, You are to produce Documents and Communications to the extent possible, specify the reason for Your inability to produce further Documents and Communications, and state what knowledge, information or belief You have concerning the unproduced portion.

10. All Documents and Communications that cannot be legibly copied must be produced in their original form.

11. Non-identical copies of Documents and Communications, drafts of copies with annotations, and marks of marginalia shall be treated and produced as separate copies.

12. With respect to electronically stored information ("ESI"):

    a. All spreadsheets responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

    b. All other Documents and Communications responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in properly unitized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

    c. All Documents and Communications responsive to these requests shall be produced with the metadata normally contained within such Documents and Communications, and any necessary Concordance load files. If such metadata is not available, each Document and Communication shall be accompanied by a listing of all file properties concerning such Document or Communication, including, but not limited to, all information concerning the date(s) the

Document or Communication was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

d.  Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI.  ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.  Databases or underlying data should not be produced without first discussing production format issues with Adana Investing, Inc.'s counsel. If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden or cost You claim is associated with the search or production of such ESI.

13. Documents and Communications in electronic format may be produced in electronic format on disk or other media in the original electronic file format(s) of the Documents and Communications.

14. If a Document or Communication that once existed has subsequently been lost, destroyed or is otherwise unavailable, provide sufficient information to identify the Document or Communication, describe its contents, explain how and when it was lost or destroyed, and identify the person who last possessed the Document or Communication.

15. If no Documents or information responsive to a particular request for production exist or are within Your possession, custody, or control, You must state so in Your response.

16. If You object to any request on the ground that it is overly broad or unduly burdensome, You are instructed to respond to the request for production as narrowed to conform to Your objection within the period allowed for a response and to state in Your response (a) how You narrowed the request and (b) the reason why You claim the request is overly broad.

17. Any reference to a person who is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership or any other artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

## DOCUMENTS TO BE PRODUCED

1.     All Communications related to or regarding Adana, including, without limitation, those between You and each of the following individuals and entities:

      i. Forrest Capital Partners
     ii. Forrest Capital and Co.
   iii. Weathervane Productions
   iv. WVP Holdings
    v. The JV Group
   vi. Capital B
  vii. Benjamin McConley
 viii. Jason Van Eman
   ix. Arvest Bank
    x. Wells Fargo Bank
   xi. Wells Fargo Advisors
  xii. Zoch
 xiii. Rafael
 xiv. Bermudez
  xv. Aaron McConley

11

    xvi.  Livia McConley
   xvii.  Richard Rossi
  xviii.  Adam Falcoff
    xix.  Barltett
     xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
   xxii.  Vandermolen Films
  xxiii.  BSFG
  xxiv.  Aldamisa
   xxv.  London Town Pic

2.     All Communications related to or regarding the Subject Films, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Jason Van Eman
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
   xiii.  Rafael
   xiv.  Bermudez
    xv.  Aaron McConley
   xvi.  Livia McConley
  xvii.  Richard Rossi
 xviii.  Adam Falcoff
   xix.  Barltett
    xx.  Alastair Burlingham
   xxi.  Lee Vandermolen
  xxii.  Vandermolen Films
 xxiii.  BSFG
 xxiv.  Aldamisa
  xxv.  London Town Pic

3.     All Communications related to or regarding the production of films or film financing, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.

   iii.  Weathervane Productions
   iv.  WVP Holdings
    v.  The JV Group
   vi.  Capital B
  vii.  Benjamin McConley
 viii.  Jason Van Eman
   ix.  Arvest Bank
    x.  Wells Fargo Bank
   xi.  Wells Fargo Advisors
  xii.  Zoch
 xiii.  Rafael
 xiv.  Bermudez
  xv.  Aaron McConley
 xvi.  Livia McConley
 xvii.  Richard Rossi
xviii.  Adam Falcoff
 xix.  Barltett
  xx.  Alastair Burlingham
 xxi.  Lee Vandermolen
 xxii.  Vandermolen Films
xxiii.  BSFG
xxiv.  Aldamisa
 xxv.  London Town Pic
xxvi.  Miller
xxvii.  Superhuman
xxviii.  Soral
xxix.  Buzbee

4.     All Communications with, related to, or regarding BSFG, including, without limitation, those between You and each of the following individuals and entities:

    i.  Forrest Capital Partners
   ii.  Forrest Capital and Co.
  iii.  Weathervane Productions
  iv.  WVP Holdings
   v.  The JV Group
  vi.  Capital B
 vii.  Benjamin McConley
viii.  Jason Van Eman
  ix.  Arvest Bank
   x.  Wells Fargo Bank
  xi.  Wells Fargo Advisors
 xii.  Zoch
xiii.  Rafael
xiv.  Bermudez
 xv.  Aaron McConley

    xvi.  Livia McConley
   xvii.  Richard Rossi
  xviii.  Adam Falcoff
    xix.  Barltett
    xx.  Alastair Burlingham
   xxi.  Lee Vandermolen
  xxii.  Vandermolen Films

5.    All Communications with, related to, or regarding Miller, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Jason Van Eman
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
   xiii.  Rafael
   xiv.  Bermudez
    xv.  Aaron McConley
   xvi.  Livia McConley
  xvii.  Richard Rossi
 xviii.  Adam Falcoff
   xix.  Barltett
   xx.  Alastair Burlingham
  xxi.  Lee Vandermolen
 xxii.  Vandermolen Films

6.    All Communications with, related to, or regarding Buzbee, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Jason Van Eman
    ix.  Arvest Bank

14

      x.  Wells Fargo Bank
     xi.  Wells Fargo Advisors
    xii.  Zoch
   xiii.  Rafael
   xiv.  Bermudez
    xv.  Aaron McConley
   xvi.  Livia McConley
  xvii.  Richard Rossi
 xviii.  Adam Falcoff
   xix.  Barltett
    xx.  Alastair Burlingham
   xxi.  Lee Vandermolen
  xxii.  Vandermolen Films

7.     All Communications with, related to, or regarding to Superhuman, including, without limitation, those between You and each of the following individuals and entities:

       i.  Forrest Capital Partners
      ii.  Forrest Capital and Co.
     iii.  Weathervane Productions
     iv.  WVP Holdings
      v.  The JV Group
     vi.  Capital B
    vii.  Benjamin McConley
   viii.  Jason Van Eman
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
  xiii.  Rafael
  xiv.  Bermudez
   xv.  Aaron McConley
  xvi.  Livia McConley
 xvii.  Richard Rossi
xviii.  Adam Falcoff
  xix.  Barltett
   xx.  Alastair Burlingham
  xxi.  Lee Vandermolen
 xxii.  Vandermolen Films

8.     All Communications with, related to, or regarding Soral, including, without limitation, those between You and each of the following individuals and entities:

       i.  Forrest Capital Partners
      ii.  Forrest Capital and Co.
     iii.  Weathervane Productions

    iv. WVP Holdings
    v. The JV Group
    vi. Capital B
    vii. Benjamin McConley
    viii. Jason Van Eman
    ix. Arvest Bank
    x. Wells Fargo Bank
    xi. Wells Fargo Advisors
    xii. Zoch
    xiii. Rafael
    xiv. Bermudez
    xv. Aaron McConley
    xvi. Livia McConley
    xvii. Richard Rossi
    xviii. Adam Falcoff
    xix. Barltett
    xx. Alastair Burlingham
    xxi. Lee Vandermolen
    xxii. Vandermolen Films

9.    All Documents and Commutations related to or regarding the May 15, 2015 Bridging Facility Agreement, attached hereto as Ex. 1.

10.    All Documents and Commutations related to or regarding the May 15, 2015 Funding Agreement, attached hereto as Ex. 2.

11.    All Documents and Commutations related to or regarding the June 22, 2015 Bridging Facility Agreement, attached hereto as Ex. 3.

12.    All Documents and Commutations related to or regarding the June 22, 2015 Funding Agreement, attached hereto as Ex. 4.

13.    All Documents and Commutations related to or regarding the July 13, 2015 Bridging Facility Agreement, attached hereto as Ex. 5.

14.    All Documents and Commutations related to or regarding the July 13, 2015 Funding Agreement, attached hereto as Ex. 6.

15.    All Communications between You and Adana.

16.    All Communications between You and Burlingham.

17.    All Communications between You and Vandermolen.

18.    All Communications between You and Vandermolen Films.

19.  All Communications between You and Aldamisa.

20.  All Communications between You and Zoch.

21.  All Communications between You and Bermudez.

22.  All Communications between You and Rafael.

23.  All Communications between You and Barlett.

24.  All Documents related to or regarding agreements between You and Aldamisa.

25.  All Communications between You and London Town Pic.

26.  All Documents related to or regarding agreements between You and London Town Pic.

27.  All Documents and Communications related to or regarding Forrest Capital Partners' charter.

28.  Copies of Your tax returns for the years 2011, 2012, 2013, 2014, and 2015.

29.  All Documents and Communications related to Your use of the loan proceeds provided by Adana under the May 15, 2015, June, 22, 2015, and July 13, 2015 Bridging Facility Agreements.

30.  All Documents and Communications related to or regarding an agreement between WVP Holding and/or Weathervane and Forrest Capital Partners for Forrest Capital Partners to provide funding or a loan to WVP Holding.

31.  All Communications between You and any of the other Forrest Capital Parties.

32.  All Documents related to or regarding any and all agreements between You and any of the other Forrest Capital Parties.

33.  All Documents and Communications related to or evidencing any payments or transfers of money between You and any of the other Forrest Capital Parties.

34.  All Documents and Communications related to or evidencing any payments or transfers of money between any of the Forrest Capital Parties and Zoch and/or any entity under Zoch's control or for which he is the ultimate beneficiary.

35.  All Documents and Communications related to or evidencing any payments or transfers of money between any of the Forrest Capital Parties and Rafael and/or any

entity under Rafael's control or for which he is the ultimate beneficiary (including, without limitation, Capital B).

36.     All Documents and Communications related to or evidencing any payments or transfers of money between any of the Forrest Capital Parties and Bermudez and/or any entity under Bermudez' control or for which he is the ultimate beneficiary.

37.     All applications to Wells Fargo Bank for a line of credit.

38.     All applications to Wells Fargo Advisors for a line of credit.

39.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos.

40.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos.

41.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos.

42.     All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos.

43.     All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos.

44.     All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos.

45.     All Documents and Communications referencing account numbers

account number ending in      in the name of Forrest Capital & Company, LLC,
account number ending in      in the name of Forrest Capital & Company, LLC,
WVP / Lats Holdings, LL, account number ending in    in the name of Forrest
Capital Partners, Inc., and account number ending in    in the name of WVP
Holding, Inc.

46.   All Documents and Communications related to or regarding the meeting held on October 30, 2014 at Wells Fargo Advisors.

47.   All Documents and Communications related to or regarding the meeting held on March 13, 2015 at Wells Fargo Bank.

48.   All Documents and Communications related to or regarding the meeting held on March 16, 2015 at Wells Fargo Bank.

49.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital Partners.

50.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital and Co.

51.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for WVP Holding.

52.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Weathervane Productions.

53.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for The JV Group.

54.   All Communications between You and Arvest Bank related to or regarding account nos.

55.   A sworn Affidavit of Authenticity referencing and exhibiting Documents produced in response to this subpoena.

Copies of documents responsive to this Subpoena MUST be received in this office no later than the date indicated in the Subpoena or you may be in contempt of Court. If there is a delay for any reason, please e-mail john.couriel@kobrekim.com.

**IF THE ESTIMATED CHARGE FOR COPYING THE RECORDS EXCEEDS $250.00, PLEASE CONTACT THIS OFFICE BEFORE PREPARING THE COPIES.**

# EXHIBIT 1-B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| ADANA INVESTING, INC. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.  1:15-cv-24038-COOKE/TORRES |
| FORREST CAPITAL PARTNERS, INC., et al. | ) |
| _Defendant_ | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Edmund Ross Marroso, Jr.
          8432 Woodland Shore Drive, Brighton, MI 48114
_____
                _(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: The Law Offices of Jay Y. Mandel, PLLC | Date and Time: |
|---|---|
| 535 Griswold Street, Suite 1000 Detroit, MI 48226 | 08/24/2016 10:00 am |

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

· The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/08/2016

_CLERK OF COURT_

                              OR      _John D. Couriel_

_____          _____
_Signature of Clerk or Deputy Clerk_            _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
ADANA INVESTING, INC. _____, who issues or requests this subpoena, are:
John D. Couriel, 2 South Biscayne Boulevard, 35th fl., Miami, FL 33131, john.couriel@kobrekim.com, (305) 967-6115

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i) is a party or a party's officer; or
        (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
    (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
    (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
    (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

### I.    Definitions

1.    All words, terms, and phrases not specifically defined in this Exhibit A are to be given their normal and customary meaning in the context in which they are used herein.

2.    "Adana Investing" means Adana Investing, Inc. and any of its subsidiaries, affiliates, member firms, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

3.    "And" as well as "or" shall be construed both conjunctively and disjunctively as necessary in order to bring within the scope of the requests all responses which might otherwise be construed outside its scope.

4.    "Any," "all," and "each" shall each be construed as meaning any, all, and each.

5.    "Asset" means any tangible or intangible item of economic value located anywhere in the world in any form, including without limitation, and whether prepaid or deferred, any cash, income, securities, bank accounts, line of credit, accounts receivable, gifts, trademarks, patents, copyrights, goodwill, personal property, or any interest in any real property, including in any leasehold, or any ownership, membership, credit or other interest in, whether direct or indirect or legal or equitable, or any power, control or discretion otherwise with respect to the disposition of, any asset of any person.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including, without limitation, all discussions, conversations, negotiations, meetings, telephone conversations, voicemails, letters, memoranda, notes, e-mails, text messages, iMessages, instant messages (*e.g.*, through Skype, Microsoft Lync, or any other

1

messaging program), or messages delivered through social media (*e.g.* Twitter and Facebook), and all other manner or means of transmittal of information, whether oral or written.

7.     "Concerning," "relating to," "related to," and "referring to" are used, for the purposes of these requests, as equivalent terms, each including the others.

8.     "Defendants" means Forrest Capital Partners, Inc., Forrest Capital and Co LLC, Weathervane Productions, Inc., WVP Holding, Inc., The JV Group, Capital B, LLC, Jason Van Eman, and Benjamin Forrest McConley as herein defined.

9.     "Document" includes, without limitation, electronically stored information ("ESI") (as defined below); all drafts; communications; correspondence; electronic mail; social media (*e.g.*, Twitter and Facebook) messages or "posts"; spreadsheets or accounting ledgers; calendars; memoranda; records; client lists; reports; books; reports and/or summaries of conversations or interviews; diaries; journals; notebooks; graphs; charts; diagrams; tables; photographs; recordings; audio and video tapes; microfilms; minutes, summaries, reports and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or other notes; checks, front and back; check vouchers, check stubs or receipts; tape data sheets, data processing cards or discs or any other written, printed, typewritten or otherwise recorded matter, however produced, reproduced, whether or not now in existence; and any paper or writing including files, contracts, correspondence, telegrams, agreements, letters, notes, manuals, employee handbooks, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after translation by You into a reasonably usable form. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. Where the electronic and hard copy versions

2

of any document are separate documents per this definition, both the electronic and hard copy versions should be produced.

10.    Electronically stored information ("ESI") includes without limitation:

a.  information that is generated, received, processed, and recorded by computers and other electronic devices including, without limitation, voicemail, electronic mail, and facsimiles;

b.  internal or external web sites;

c.  output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, chat, instant message or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment;

d.  activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as but not limited to a personal digital assistant, smart phone or tablet and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein; and

e.  information, messages, or "posts" transmitted through, posted to, or stored on any social media website, including Facebook, Twitter, Linked In, XboxLive,

Foursquare, Gowalla, MySpace, Windows Live Spaces, Instagram, and Pinterest.

11.     "Including" has its standard meaning and also means "including, but not limited to" and "including, without limitation."

12.     "Aaron McConley" means Aaron McConley and anyone acting for or on his behalf.

13.     "Adam Falcoff" means Adam Falcoff and anyone acting for or on his behalf.

14.     "Alastair Burlingham" means Alastair Burlingham and anyone acting for or on his behalf.

15.     "Aldamisa" means Aldamisa Releasing, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

16.     "Arvest Bank" means Arvest Bank and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

17.     "Barlett" means Robert Barlett and anyone acting for or on his behalf.

18.     "Bermudez" means Hernan Bermudez and anyone acting for or on his behalf.

19.     "BSFG" means BSFG VI, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

20.     "Buzbee" means Anthony G. Buzbee and anyone acting for or on his behalf.

4

21.    "Capital B" means Capital B, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

22.    "Forrest Capital Partners" means Forrest Capital Partners, Inc. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

23.    "Forrest Capital and Co" means Forrest Capital and Co and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

24.    "Vandermolen" means Lee Vandermolen and anyone acting for or his behalf.

25.    "Livia McConley" means Livia McConley and anyone acting for or on her behalf.

26.    "London Town Pic" means London Town Pic Limited and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

27.    "McConley" means Benjamin McConley and anyone acting for or on his behalf.

28.    "Miller" means Dane Miller and anyone acting for or on his behalf.

29.    "Soraí" means Soraí, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf, including, without limitation, Dan Koetting and Carolyn Paul.

30.    "Subject Films" means the films presently or formerly known as *Capitive, IMAX Asteroids, Royal Ice, London Town, Jane Got a Gun, Urge,* and *Grief Camp,* and referenced in the Funding Agreements attached hereto as Ex. Nos. 2, 4, and 6.

5

31.   "Superhuman" means Superhuman International Pty Ltd and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

32.   "Rafael" means Benjamin Rafael and anyone acting for or on his behalf.

33.   "Rossi" means Richard Rossi and anyone acting for or on his behalf.

34.   "Ross Marroso" means Edmund Ross Marroso, Jr. and anyone acting for or on his behalf.

35.   "The JV Group" means The JV Group LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

36.   "Van Eman" means Jason Van Eman, and anyone acting for or on his behalf.

37.   "Vandermolen Films" means Vandermolen Films, Ltd. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

38.   "Weathervane" means Weathervane Productions, Inc., and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

39.   "Wells Fargo Advisors" means Wells Fargo Advisors and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

40.   "Wells Fargo" means Wells Fargo Bank, N.A. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

41.    "WVP Holding" means WVP Holding, LLC, and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

42.    "Zoch" means Paul Zoch and anyone acting for or on his behalf.

43.    "Relevant Period" refers to January 1, 2010 to the present.

44.    "You" and "Your" refers to Edmund Ross Marroso, Jr., and anyone acting for or on his behalf.

## II. Instructions

1.  The singular of any term shall include its plural, and vice-versa.

2.  Unless otherwise specified, the requests in Section III below require the production of all responsive Documents and Communications.

3.  These requests are continuing in nature, and all responsive Documents and Communications that are created or obtained subsequent to a previous production shall be produced forthwith.

4.  Unless otherwise specified, each paragraph and subparagraph hereof and the Definitions herein are to be construed independently and not by or with reference to any other paragraph or subparagraph or Definition herein for the purposes of limiting the scope of any particular request or the subject matter thereof.

5.  All Documents and Communications produced in response to this request shall either (a) be organized and labeled to correspond with the number of the request to which the Documents and Communications are responsive, or (b) be produced as they are kept in the usual course of business and shall be presented in the file folder, envelope, or other container in which the Documents and Communications are maintained.  If Documents and Communications are

maintained electronically, they shall be produced in native file format with all associated metadata.

6. If a Document or Communication is redacted or not produced on the ground that it is privileged and therefore not subject to disclosure, a log containing the following information must be supplied for each:

   a. the nature of the privilege being claimed; and

   b. for Documents and ESI, other such information as is sufficient to identify the Document, including, where applicable, the type of Document, the subject matter, the date of the Document (and, in the case of e-mails, the time of transmission), the author(s) of the Document, the recipient(s) of the Document, the identity of any person who had an opportunity to review such Document and, where not apparent, the relationship of the author and the addressee to each other.

7. Each Document and Communication requested herein shall be produced in its entirety without deletion, redaction or exclusions, regardless of whether You consider the entire Document or Communication relevant or responsive; if You have redacted any portion of the Document or Communication, stamp the word "REDACTED" beside the redacted information on each page of the Document or Communication which You have redacted; any redactions to Documents or Communications produced should be identified on a privilege log in accordance with instruction 5.

8. All Documents and Communications (unless they are electronic documents produced in native format) should be "Bates" numbered sequentially with a unique number on each page, and with a prefix identifying the party producing the document.

8

9. If any of the below-requests cannot be responded to in full, You are to produce Documents and Communications to the extent possible, specify the reason for Your inability to produce further Documents and Communications, and state what knowledge, information or belief You have concerning the unproduced portion.

10. All Documents and Communications that cannot be legibly copied must be produced in their original form.

11. Non-identical copies of Documents and Communications, drafts of copies with annotations, and marks of marginalia shall be treated and produced as separate copies.

12. With respect to electronically stored information ("ESI"):

   a. All spreadsheets responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

   b. All other Documents and Communications responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in properly unitized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

   c. All Documents and Communications responsive to these requests shall be produced with the metadata normally contained within such Documents and Communications, and any necessary Concordance load files. If such metadata is not available, each Document and Communication shall be accompanied by a listing of all file properties concerning such Document or Communication, including, but not limited to, all information concerning the date(s) the

Document or Communication was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

d.   Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI.   ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.   Databases or underlying data should not be produced without first discussing production format issues with Adana Investing, Inc.'s counsel. If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden or cost You claim is associated with the search or production of such ESI.

13. Documents and Communications in electronic format may be produced in electronic format on disk or other media in the original electronic file format(s) of the Documents and Communications.

14. If a Document or Communication that once existed has subsequently been lost, destroyed or is otherwise unavailable, provide sufficient information to identify the Document or Communication, describe its contents, explain how and when it was lost or destroyed, and identify the person who last possessed the Document or Communication.

15. If no Documents or information responsive to a particular request for production exist or are within Your possession, custody, or control, You must state so in Your response.

10

16. If You object to any request on the ground that it is overly broad or unduly burdensome, You are instructed to respond to the request for production as narrowed to conform to Your objection within the period allowed for a response and to state in Your response (a) how You narrowed the request and (b) the reason why You claim the request is overly broad.

17. Any reference to a person who is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership or any other artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

## DOCUMENTS TO BE PRODUCED

1.   All Communications related to or regarding Adana, including, without limitation, those between You and each of the following individuals and entities:

   i. Forrest Capital Partners
   ii. Forrest Capital and Co.
   iii. Weathervane Productions
   iv. WVP Holdings
   v. The JV Group
   vi. Capital B
   vii. Benjamin McConley
   viii. Jason Van Eman
   ix. Arvest Bank
   x. Wells Fargo Bank
   xi. Wells Fargo Advisors
   xii. Zoch
   xiii. Rafael
   xiv. Bermudez
   xv. Aaron McConley

11

  xvi. Livia McConley
  xvii. Richard Rossi
  xviii. Adam Falcoff
  xix. Barltett
  xx. Alastair Burlingham
  xxi. Lee Vandermolen
  xxii. Vandermolen Films
  xxiii. BSFG
  xxiv. Aldamisa
  xxv. London Town Pic

2. All Communications related to or regarding the Subject Films, including, without limitation, those between You and each of the following individuals and entities:

  i. Forrest Capital Partners
  ii. Forrest Capital and Co.
  iii. Weathervane Productions
  iv. WVP Holdings
  v. The JV Group
  vi. Capital B
  vii. Benjamin McConley
  viii. Jason Van Eman
  ix. Arvest Bank
  x. Wells Fargo Bank
  xi. Wells Fargo Advisors
  xii. Zoch
  xiii. Rafael
  xiv. Bermudez
  xv. Aaron McConley
  xvi. Livia McConley
  xvii. Richard Rossi
  xviii. Adam Falcoff
  xix. Barltett
  xx. Alastair Burlingham
  xxi. Lee Vandermolen
  xxii. Vandermolen Films
  xxiii. BSFG
  xxiv. Aldamisa
  xxv. London Town Pic

3. All Communications related to or regarding the production of films or film financing, including, without limitation, those between You and each of the following individuals and entities:

  i. Forrest Capital Partners
  ii. Forrest Capital and Co.

    iii.  Weathervane Productions
    iv.  WVP Holdings
    v.  The JV Group
    vi.  Capital B
    vii.  Benjamin McConley
    viii.  Jason Van Eman
    ix.  Arvest Bank
    x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii.  Zoch
    xiii.  Rafael
    xiv.  Bermudez
    xv.  Aaron McConley
    xvi.  Livia McConley
    xvii.  Richard Rossi
    xviii.  Adam Falcoff
    xix.  Barltett
    xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
    xxii.  Vandermolen Films
    xxiii.  BSFG
    xxiv.  Aldamisa
    xxv.  London Town Pic
    xxvi.  Miller
    xxvii.  Superhuman
    xxviii.  Soral
    xxix.  Buzbee

4.    All Communications with, related to, or regarding BSFG, including, without limitation, those between You and each of the following individuals and entities:

    i.  Forrest Capital Partners
    ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
    v.  The JV Group
    vi.  Capital B
    vii.  Benjamin McConley
    viii.  Jason Van Eman
    ix.  Arvest Bank
    x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii.  Zoch
    xiii.  Rafael
    xiv.  Bermudez
    xv.  Aaron McConley

    xvi.  Livia McConley
   xvii.  Richard Rossi
  xviii.  Adam Falcoff
    xix.  Barltett
     xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
   xxii.  Vandermolen Films

5.     All Communications with, related to, or regarding Miller, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Jason Van Eman
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
  xiii.  Rafael
  xiv.  Bermudez
   xv.  Aaron McConley
  xvi.  Livia McConley
 xvii.  Richard Rossi
xviii.  Adam Falcoff
  xix.  Barltett
   xx.  Alastair Burlingham
  xxi.  Lee Vandermolen
 xxii.  Vandermolen Films

6.     All Communications with, related to, or regarding Buzbee, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Jason Van Eman
    ix.  Arvest Bank

     x.  Wells Fargo Bank
     xi.  Wells Fargo Advisors
     xii.  Zoch
     xiii.  Rafael
     xiv.  Bermudez
     xv.  Aaron McConley
     xvi.  Livia McConley
     xvii.  Richard Rossi
     xviii.  Adam Falcoff
     xix.  Barltett
     xx.  Alastair Burlingham
     xxi.  Lee Vandermolen
     xxii.  Vandermolen Films

7.    All Communications with, related to, or regarding to Superhuman, including, without limitation, those between You and each of the following individuals and entities:

     i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
     iii.  Weathervane Productions
     iv.  WVP Holdings
     v.  The JV Group
     vi.  Capital B
     vii.  Benjamin McConley
     viii.  Jason Van Eman
     ix.  Arvest Bank
     x.  Wells Fargo Bank
     xi.  Wells Fargo Advisors
     xii.  Zoch
     xiii.  Rafael
     xiv.  Bermudez
     xv.  Aaron McConley
     xvi.  Livia McConley
     xvii.  Richard Rossi
     xviii.  Adam Falcoff
     xix.  Barltett
     xx.  Alastair Burlingham
     xxi.  Lee Vandermolen
     xxii.  Vandermolen Films

8.    All Communications with, related to, or regarding Soral, including, without limitation, those between You and each of the following individuals and entities:

     i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
     iii.  Weathervane Productions

15

    iv.  WVP Holdings
    v.  The JV Group
    vi.  Capital B
    vii.  Benjamin McConley
    viii.  Jason Van Eman
    ix.  Arvest Bank
    x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii.  Zoch
    xiii.  Rafael
    xiv.  Bermudez
    xv.  Aaron McConley
    xvi.  Livia McConley
    xvii.  Richard Rossi
    xviii.  Adam Falcoff
    xix.  Barltett
    xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
    xxii.  Vandermolen Films

9.    All Documents and Commutations related to or regarding the May 15, 2015 Bridging Facility Agreement, attached hereto as Ex. 1.

10.    All Documents and Commutations related to or regarding the May 15, 2015 Funding Agreement, attached hereto as Ex. 2.

11.    All Documents and Commutations related to or regarding the June 22, 2015 Bridging Facility Agreement, attached hereto as Ex. 3.

12.    All Documents and Commutations related to or regarding the June 22, 2015 Funding Agreement, attached hereto as Ex. 4.

13.    All Documents and Commutations related to or regarding the July 13, 2015 Bridging Facility Agreement, attached hereto as Ex. 5.

14.    All Documents and Commutations related to or regarding the July 13, 2015 Funding Agreement, attached hereto as Ex. 6.

15.    All Communications between You and Adana.

16.    All Communications between You and Burlingham.

17.    All Communications between You and Vandermolen.

18.    All Communications between You and Vandermolen Films.

19.     All Communications between You and Aldamisa.

20.     All Communications between You and Zoch.

21.     All Communications between You and Bermudez.

22.     All Communications between You and Rafael.

23.     All Communications between You and Bartlett.

24.     All Documents related to or regarding agreements between You and Aldamisa.

25.     All Communications between You and London Town Pic.

26.     All Documents related to or regarding agreements between You and London Town Pic.

27.     All Documents and Communications related to or regarding Forrest Capital Partners' charter.

28.     Copies of Your tax returns for the years 2011, 2012, 2013, 2014, and 2015.

29.     All Documents and Communications related to Your use of the loan proceeds provided by Adana under the May 15, 2015, June, 22, 2015, and July 13, 2015 Bridging Facility Agreements.

30.     All Documents and Communications related to or regarding an agreement between WVP Holding and/or Weathervane and Forrest Capital Partners for Forrest Capital Partners to provide funding or a loan to WVP Holding.

31.     All Communications between You and any of the Defendants.

32.     All Documents related to or regarding any and all agreements between You and any of the Defendants.

33.     All Documents and Communications related to or evidencing any payments or transfers of money between You and any of the Defendants.

34.     All Documents and Communications related to or evidencing any payments or transfers of money between any of the Defendants and Zoch and/or any entity under Zoch's control or for which he is the ultimate beneficiary.

35.     All Documents and Communications related to or evidencing any payments or transfers of money between You and Zoch and/or any entity under Zoch's control or for which he is the ultimate beneficiary.

17

36. All Documents and Communications related to or evidencing any payments or transfers of money between any of the Defendants and Rafael and/or any entity under Rafael's control or for which he is the ultimate beneficiary (including, without limitation, Capital B).

37. All Documents and Communications related to or evidencing any payments or transfers of money between You and Rafael and/or any entity under Rafael's control or for which he is the ultimate beneficiary (including, without limitation, Capital B).

38. All Documents and Communications related to or evidencing any payments or transfers of money between any of the Defendants and Bermudez and/or any entity under Bermudez' control or for which he is the ultimate beneficiary.

39. All Documents and Communications related to or evidencing any payments or transfers of money between You and Bermudez and/or any entity under Bermudez' control or for which he is the ultimate beneficiary

40. All applications to Wells Fargo Bank for a line of credit.

41. All applications to Wells Fargo Advisors for a line of credit.

42. All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos.

43. All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos.

44. All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos.

45. All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos.

46. All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital and Co., including without

limitation,   account   nos.

47.   All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos.

48.   All Documents and Communications referencing account numbers

account number ending                              in the name of Forrest Capital & Company, LLC,
account number ending                              in the name of Forrest Capital & Company, LLC,
WVP / Lats Holdings, LL, account number ending in       in the name of Forrest
Capital Partners, Inc., and account number ending in      in the name of WVP
Holding, Inc.

49.   All Documents and Communications related to or regarding the meeting held on October 30, 2014 at Wells Fargo Advisors.

50.   All Documents and Communications related to or regarding the meeting held on March 13, 2015 at Wells Fargo Bank.

51.   All Documents and Communications related to or regarding the meeting held on March 16, 2015 at Wells Fargo Bank.

52.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital Partners.

53.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital and Co.

54.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for WVP Holding.

55.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Weathervane Productions.

56.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for The JV Group.

57.   All Communications between You and Arvest Bank related to or regarding account nos. :

19

# EXHIBIT 1-C

Consulting Agreement
WeatherVane & Edmund Ross Marroso Jr.
February 5th 2015

IF for ERM:

      Edmund Ross Marroso Jr.
      40601 Laden Lane
      Novi, MI 48375

**Severability:** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**Waiver Of Contractual Right:** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**Applicable Law:** This Agreement shall be governed by the laws of the State of Oklahoma.

**Assignment:** ERM agrees that it will not assign, sell, transfer, delegate or otherwise dispose of any rights or obligations under this Agreement. Any purported assignment, transfer, or delegation shall be null and void. Nothing in this Agreement shall prevent the consolidation of WVP, Inc. with, or its merger into, any other corporation, or the sale by WVP, Inc. of all or substantially all of its properties or assets, or the assignment by WVP, Inc. of this Agreement and the performance of its obligations hereunder to any successor in interest or any Affiliated Company. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legal representatives, successors, and permitted assigns, and shall not benefit any person or entity other than those enumerated above.

ERM and WVP declare that they have full authority and ability to fulfill all the terms of this agreement.

If either party requests a longer or more elaborate version of this agreement within the next three-hundred and sixty-five (365) days from signing of this document, the parties agree to negotiate in good faith using the terms of this document for formalize the new agreement.

This Agreement of four (4) pages and appendix "A" and "B" contains the full and complete understanding and agreement between the parties and is a complete statement of the terms and conditions agreed to by the parties and that all negotiations, discussions and any prior communications between the parties have either been included in this agreement or have been specifically excluded from this agreement.

initials: *JMV* /_____

Consulting Agreement
WeatherVane & Edmund Ross Marroso Jr.
February 5th 2015

**Signature Page**
WeatherVane & Edmund Ross Marroso Jr.

IN WITNESS WHEREOF, the parties have duly executed this Agreement to be effective as of the date first above written.

Party receiving services:
WeatherVane Productions, Inc.

By: _____

Jason Van Eman
President

Date: 02-05-2015

Party providing services:
Edmund Ross Marroso Jr.

By: _____

Edmund Ross Marroso Jr.

Date: 02-05-2015

initials: *JMV* / _____

Consulting Agreement
WeatherVane & Edmund Ross Marroso Jr.
February 5th 2015

Appendix "A"

At the present date the following listed (but not limited to) entities are in active communication
with the parties and fall under the terms of this agreement:

Indomitable Entertainment and its principles: Stuart Pollok & Robert Deege

Hurricane Films and its principles:  Sol Papadopoulos & Roy Butler

Cinevee and its principle Patrick Werksma

FountainHead Pictures and its principle Aaron Shuster

Benaroya Pictures and its Principle Michael Benaroya

Marquee Productions and its principle Straw Weisman

The Film Maker Studio venture in Puerto Rico and its principles Glen Weisberger, Luis
Rodriguez, John Palmer, Juan Gomez-Velez, Tito Bonilla

The Fyzz Facility and its principle David Gilbery

AMBI Distribution Group and its principle Andrea Iervolino
AIC Movies inc. and its principle Ivano Varlese

Big Bad Wolff Casting and its principle Gerald Wolff

Contrarian Vision and its principle Timothy Driver

Cinema Management Group and its vie president Daniel Bort

initials: *JMV* /_____

Consulting Agreement
WeatherVane & Edmund Ross Marroso Jr.
February 5th 2015

Appendix "B"

**Expected revenues streams**

The expected revenue streams expected to be received by WeatherVane Production Inc. as a result of the ventures listed in this agreements include but are not limited to:

1. WeatherVane may receive payments from Forrest Capital Partners (FCP) and its principle Ben McConley from time to time equal to two (2%) percent of the amount on deposit with FCP as facilitated by WeatherVane with the involvement of ERM.

2. Additional payments from FCP

3. WeatherVane expects to receive within 2 years a full refund of all monies paid to FCP by various entities as facilitated by the parties less any required payments to FCP.

4. WeatherVane shall receive monies and returns on investments from various entities facilitated by the parties.

5. "Producer Fees": Fees paid to WVP from entities receiving funds from FCP for their endeavors

WeatherVane shall only be required to pay ERM based on actual monies received by WeatherVane or a related entity who accepts monies on behalf of WeatherVane in consideration of the endeavors and efforts of the parties.

initials: *JMV* / _____

# EXHIBIT 1-D

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| ADANA INVESTING, INC. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   1:16-cv-21562-UNGARO |
| WELLS FARGO BANK, N.A., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          WVP Holding, Inc., C/O Jaarid, Inc.
                4853 S. Sheridan Road, 613, Tulsa OK 74135
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: Kobre & Kim LLP | Date and Time: |
|---|---|
|      2 South Biscayne Boulevard, 35th Floor | |
|      Miami, Florida 33131 | 08/17/2016 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __7/25/16__

            *CLERK OF COURT*
                                OR

_____         _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ADANA INVESTING, INC.                     , who issues or requests this subpoena, are:
John D. Couriel, 2 South Biscayne Boulevard, 35th fl., Miami, FL 33131 john.couriel@kobrekim.com, (305) 967-6115

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-cv-21562-UNGARO

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* WVP Holding, Inc.
on *(date)* July 27, 2016

☒ I served the subpoena by delivering a copy to the named person as follows: Jason Van
Eman

_____ on *(date)* July 30, 2016 ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $        0.00

I declare under penalty of perjury that this information is true.

Date: Aug 5, 2016

_____
*Server's signature*

Claudia Dohn
*Printed name and title*

Service of Process, Inc.
P.O. Box 653653
Miami, Fl 33265
Office: 305-226-6809

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

### I.   Definitions

1.     All words, terms, and phrases not specifically defined in this Exhibit A are to be given their normal and customary meaning in the context in which they are used herein.

2.     "Adana Investing" means Adana Investing, Inc. and any of its subsidiaries, affiliates, member firms, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

3.     "And" as well as "or" shall be construed both conjunctively and disjunctively as necessary in order to bring within the scope of the requests all responses which might otherwise be construed outside its scope.

4.     "Any," "all," and "each" shall each be construed as meaning any, all, and each.

5.     "Asset" means any tangible or intangible item of economic value located anywhere in the world in any form, including without limitation, and whether prepaid or deferred, any cash, income, securities, bank accounts, line of credit, accounts receivable, gifts, trademarks, patents, copyrights, goodwill, personal property, or any interest in any real property, including in any leasehold, or any ownership, membership, credit or other interest in, whether direct or indirect or legal or equitable, or any power, control or discretion otherwise with respect to the disposition of, any asset of any person.

6.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including, without limitation, all discussions, conversations, negotiations, meetings, telephone conversations, voicemails, letters, memoranda, notes, e-mails, text messages, iMessages, instant messages (*e.g.*, through Skype, Microsoft Lync, or any other

messaging program), or messages delivered through social media (*e.g.* Twitter and Facebook), and all other manner or means of transmittal of information, whether oral or written.

7.      "Concerning," "relating to," "related to," and "referring to" are used, for the purposes of these requests, as equivalent terms, each including the others.

8.      "Forrest Capital Parties" means Forrest Capital Partners, Inc., Forrest Capital and Co LLC, Weathervane Productions, Inc., WVP Holding, Inc., The JV Group, Capital B, LLC, Jason Van Eman, and Benjamin Forrest McConley as herein defined.

9.      "Document" includes, without limitation, electronically stored information ("ESI") (as defined below); all drafts; communications; correspondence; electronic mail; social media (*e.g.*, Twitter and Facebook) messages or "posts"; spreadsheets or accounting ledgers; calendars; memoranda; records; client lists; reports; books; reports and/or summaries of conversations or interviews; diaries; journals; notebooks; graphs; charts; diagrams; tables; photographs; recordings; audio and video tapes; microfilms; minutes, summaries, reports and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or other notes; checks, front and back; check vouchers, check stubs or receipts; tape data sheets, data processing cards or discs or any other written, printed, typewritten or otherwise recorded matter, however produced, reproduced, whether or not now in existence; and any paper or writing including files, contracts, correspondence, telegrams, agreements, letters, notes, manuals, employee handbooks, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after translation by You into a reasonably usable form. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. Where the electronic and hard copy versions

2

of any document are separate documents per this definition, both the electronic and hard copy versions should be produced.

10. Electronically stored information ("ESI") includes without limitation:

   a. information that is generated, received, processed, and recorded by computers and other electronic devices including, without limitation, voicemail, electronic mail, and facsimiles;

   b. internal or external web sites;

   c. output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, chat, instant message or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment;

   d. activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as but not limited to a personal digital assistant, smart phone or tablet and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein; and

   e. information, messages, or "posts" transmitted through, posted to, or stored on any social media website, including Facebook, Twitter, Linked In, XboxLive,

3

Foursquare, Gowalla, MySpace, Windows Live Spaces, Instagram, and Pinterest.

11.     "Including" has its standard meaning and also means "including, but not limited to" and "including, without limitation."

12.     "Aaron McConley" means Aaron McConley and anyone acting for or on his behalf.

13.     "Adam Falcoff" means Adam Falcoff and anyone acting for or on his behalf.

14.     "Alastair Burlingham" means Alastair Burlingham and anyone acting for or on his behalf.

15.     "Aldamisa" means Aldamisa Releasing, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

16.     "Arvest Bank" means Arvest Bank and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

17.     "Barlett" means Robert Barlett and anyone acting for or on his behalf.

18.     "Bermudez" means Hernan Bermudez and anyone acting for or on his behalf.

19.     "BSFG" means BSFG VI, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

20.     "Buzbee" means Anthony G. Buzbee and anyone acting for or on his behalf.

4

Case 1:16-mc-24606-UU   Document 1   Entered on FLSD Docket 09/16/2016   Page 72 of 111
Case 1:16-cv-21562-UU   Document 76-1   Entered on FLSD Docket 08/29/2016   Page 119 of
134

21.     "Capital B" means Capital B, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

22.     "Forrest Capital Partners" means Forrest Capital Partners, Inc. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

23.     "Forrest Capital and Co" means Forrest Capital and Co and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

24.     "Vandermolen" means Lee Vandermolen and anyone acting for or his behalf.

25.     "Livia McConley" means Livia McConley and anyone acting for or on her behalf.

26.     "London Town Pic" means London Town Pic Limited and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

27.     "McConley" means Benjamin McConley and anyone acting for or on his behalf.

28.     "Miller" means Dane Miller and anyone acting for or on his behalf.

29.     "Soral" means Soral, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf, including, without limitation, Dan Koetting and Carolyn Paul.

30.     "Subject Films" means the films presently or formerly known as *Capitive, IMAX Asteroids, Royal Ice, London Town, Jane Got a Gun, Urge,* and *Grief Camp,* and referenced in the Funding Agreements attached hereto as Ex. Nos. 2, 4, and 6.

5

31.    "Superhuman" means Superhuman International Pty Ltd and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

32.    "Rafael" means Benjamin Rafael and anyone acting for or on his behalf.

33.    "Rossi" means Richard Rossi and anyone acting for or on his behalf.

34.    "Ross Marroso" means Ross Marroso and anyone acting for or on his behalf.

35.    "The JV Group" means The JV Group LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

36.    "Van Eman" means Jason Van Eman, and anyone acting for or on his behalf.

37.    "Vandermolen Films" means Vandermolen Films, Ltd. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

38.    "Weathervane" means Weathervane Productions, Inc., and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

39.    "Wells Fargo Advisors" means Wells Fargo Advisors and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

40.    "Wells Fargo" means Wells Fargo Bank, N.A. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

41.     "WVP Holding" means WVP Holding, LLC, and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

42.     "Zoch" means Paul Zoch and anyone acting for or on his behalf.

43.     "Relevant Period" refers to January 1, 2011 to the present.

44.     "You" and "Your" refers to WVP Holding, and anyone acting for or on its behalf.

## II. Instructions

1.  The singular of any term shall include its plural, and vice-versa.

2.  Unless otherwise specified, the requests in Section III below require the production of all responsive Documents and Communications.

3.  These requests are continuing in nature, and all responsive Documents and Communications that are created or obtained subsequent to a previous production shall be produced forthwith.

4.  Unless otherwise specified, each paragraph and subparagraph hereof and the Definitions herein are to be construed independently and not by or with reference to any other paragraph or subparagraph or Definition herein for the purposes of limiting the scope of any particular request or the subject matter thereof.

5.  All Documents and Communications produced in response to this request shall either (a) be organized and labeled to correspond with the number of the request to which the Documents and Communications are responsive, or (b) be produced as they are kept in the usual course of business and shall be presented in the file folder, envelope, or other container in which the Documents and Communications are maintained.  If Documents and Communications are

7

maintained electronically, they shall be produced in native file format with all associated metadata.

6. If a Document or Communication is redacted or not produced on the ground that it is privileged and therefore not subject to disclosure, a log containing the following information must be supplied for each:

    a. the nature of the privilege being claimed; and

    b. for Documents and ESI, other such information as is sufficient to identify the Document, including, where applicable, the type of Document, the subject matter, the date of the Document (and, in the case of e-mails, the time of transmission), the author(s) of the Document, the recipient(s) of the Document, the identity of any person who had an opportunity to review such Document and, where not apparent, the relationship of the author and the addressee to each other.

7. Each Document and Communication requested herein shall be produced in its entirety without deletion, redaction or exclusions, regardless of whether You consider the entire Document or Communication relevant or responsive; if You have redacted any portion of the Document or Communication, stamp the word "REDACTED" beside the redacted information on each page of the Document or Communication which You have redacted; any redactions to Documents or Communications produced should be identified on a privilege log in accordance with instruction 5.

8. All Documents and Communications (unless they are electronic documents produced in native format) should be "Bates" numbered sequentially with a unique number on each page, and with a prefix identifying the party producing the document.

9.  If any of the below-requests cannot be responded to in full, You are to produce Documents and Communications to the extent possible, specify the reason for Your inability to produce further Documents and Communications, and state what knowledge, information or belief You have concerning the unproduced portion.

10. All Documents and Communications that cannot be legibly copied must be produced in their original form.

11. Non-identical copies of Documents and Communications, drafts of copies with annotations, and marks of marginalia shall be treated and produced as separate copies.

12. With respect to electronically stored information ("ESI"):

    a.  All spreadsheets responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

    b.  All other Documents and Communications responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in properly unitized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

    c.  All Documents and Communications responsive to these requests shall be produced with the metadata normally contained within such Documents and Communications, and any necessary Concordance load files. If such metadata is not available, each Document and Communication shall be accompanied by a listing of all file properties concerning such Document or Communication, including, but not limited to, all information concerning the date(s) the

Document or Communication was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

d.  Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI.  ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.  Databases or underlying data should not be produced without first discussing production format issues with Adana Investing, Inc.'s counsel. If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden or cost You claim is associated with the search or production of such ESI.

13. Documents and Communications in electronic format may be produced in electronic format on disk or other media in the original electronic file format(s) of the Documents and Communications.

14. If a Document or Communication that once existed has subsequently been lost, destroyed or is otherwise unavailable, provide sufficient information to identify the Document or Communication, describe its contents, explain how and when it was lost or destroyed, and identify the person who last possessed the Document or Communication.

15. If no Documents or information responsive to a particular request for production exist or are within Your possession, custody, or control, You must state so in Your response.

16. If You object to any request on the ground that it is overly broad or unduly burdensome, You are instructed to respond to the request for production as narrowed to conform to Your objection within the period allowed for a response and to state in Your response (a) how You narrowed the request and (b) the reason why You claim the request is overly broad.

17. Any reference to a person who is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership or any other artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

## DOCUMENTS TO BE PRODUCED

1.      All Communications related to or regarding Adana, including, without limitation, those between You and each of the following individuals and entities:

   i.   Forrest Capital Partners
   ii.  Forrest Capital and Co.
   iii. Weathervane Productions
   iv.  WVP Holdings
   v.   The JV Group
   vi.  Capital B
   vii. Benjamin McConley
   viii. Ross Marroso
   ix.  Arvest Bank
   x.   Wells Fargo Bank
   xi.  Wells Fargo Advisors
   xii. Zoch
   xiii. Rafael
   xiv. Bermudez
   xv.  Aaron McConley

11

    xvi. Livia McConley
   xvii. Richard Rossi
  xviii. Adam Falcoff
    xix. Barltett
     xx. Alastair Burlingham
    xxi. Lee Vandermolen
   xxii. Vandermolen Films
  xxiii. BSFG
  xxiv. Aldamisa
   xxv. London Town Pic

2. All Communications related to or regarding the Subject Films, including, without limitation, those between You and each of the following individuals and entities:

      i. Forrest Capital Partners
     ii. Forrest Capital and Co.
    iii. Weathervane Productions
    iv. WVP Holdings
     v. The JV Group
    vi. Capital B
   vii. Benjamin McConley
  viii. Ross Marroso
    ix. Arvest Bank
     x. Wells Fargo Bank
    xi. Wells Fargo Advisors
   xii. Zoch
  xiii. Rafael
  xiv. Bermudez
   xv. Aaron McConley
  xvi. Livia McConley
 xvii. Richard Rossi
xviii. Adam Falcoff
  xix. Barltett
   xx. Alastair Burlingham
  xxi. Lee Vandermolen
 xxii. Vandermolen Films
xxiii. BSFG
xxiv. Aldamisa
 xxv. London Town Pic

3. All Communications related to or regarding the production of films or film financing, including, without limitation, those between You and each of the following individuals and entities:

     i. Forrest Capital Partners
    ii. Forrest Capital and Co.

12

  iii. Weathervane Productions
  iv. WVP Holdings
  v. The JV Group
  vi. Capital B
  vii. Benjamin McConley
  viii. Ross Marroso
  ix. Arvest Bank
  x. Wells Fargo Bank
  xi. Wells Fargo Advisors
  xii. Zoch
  xiii. Rafael
  xiv. Bermudez
  xv. Aaron McConley
  xvi. Livia McConley
  xvii. Richard Rossi
  xviii. Adam Falcoff
  xix. Barltett
  xx. Alastair Burlingham
  xxi. Lee Vandermolen
  xxii. Vandermolen Films
  xxiii. BSFG
  xxiv. Aldamisa
  xxv. London Town Pic
  xxvi. Miller
  xxvii. Superhuman
  xxviii. Soral
  xxix. Buzbee

4.  All Communications with, related to, or regarding BSFG, including, without limitation, those between You and each of the following individuals and entities:

  i. Forrest Capital Partners
  ii. Forrest Capital and Co.
  iii. Weathervane Productions
  iv. WVP Holdings
  v. The JV Group
  vi. Capital B
  vii. Benjamin McConley
  viii. Ross Marroso
  ix. Arvest Bank
  x. Wells Fargo Bank
  xi. Wells Fargo Advisors
  xii. Zoch
  xiii. Rafael
  xiv. Bermudez
  xv. Aaron McConley

    xvi.   Livia McConley
   xvii.   Richard Rossi
  xviii.   Adam Falcoff
    xix.   Barltett
     xx.   Alastair Burlingham
    xxi.   Lee Vandermolen
   xxii.   Vandermolen Films

5.    All Communications with, related to, or regarding Miller, including, without limitation, those between You and each of the following individuals and entities:

      i.   Forrest Capital Partners
     ii.   Forrest Capital and Co.
    iii.   Weathervane Productions
    iv.   WVP Holdings
     v.   The JV Group
    vi.   Capital B
   vii.   Benjamin McConley
  viii.   Ross Marroso
    ix.   Arvest Bank
     x.   Wells Fargo Bank
    xi.   Wells Fargo Advisors
   xii.   Zoch
   xiii.   Rafael
   xiv.   Bermudez
    xv.   Aaron McConley
   xvi.   Livia McConley
   xvii.   Richard Rossi
  xviii.   Adam Falcoff
    xix.   Barltett
     xx.   Alastair Burlingham
    xxi.   Lee Vandermolen
   xxii.   Vandermolen Films

6.    All Communications with, related to, or regarding Buzbee, including, without limitation, those between You and each of the following individuals and entities:

      i.   Forrest Capital Partners
     ii.   Forrest Capital and Co.
    iii.   Weathervane Productions
    iv.   WVP Holdings
     v.   The JV Group
    vi.   Capital B
   vii.   Benjamin McConley
  viii.   Ross Marroso
    ix.   Arvest Bank

    x.   Wells Fargo Bank
   xi.   Wells Fargo Advisors
   xii.   Zoch
  xiii.   Rafael
  xiv.   Bermudez
   xv.   Aaron McConley
  xvi.   Livia McConley
 xvii.   Richard Rossi
xviii.   Adam Falcoff
  xix.   Barltett
   xx.   Alastair Burlingham
  xxi.   Lee Vandermolen
 xxii.   Vandermolen Films

7.     All Communications with, related to, or regarding to Superhuman, including, without limitation, those between You and each of the following individuals and entities:

    i.   Forrest Capital Partners
   ii.   Forrest Capital and Co.
   iii.   Weathervane Productions
   iv.   WVP Holdings
    v.   The JV Group
   vi.   Capital B
  vii.   Benjamin McConley
 viii.   Ross Marroso
   ix.   Arvest Bank
    x.   Wells Fargo Bank
   xi.   Wells Fargo Advisors
   xii.   Zoch
  xiii.   Rafael
  xiv.   Bermudez
   xv.   Aaron McConley
  xvi.   Livia McConley
 xvii.   Richard Rossi
xviii.   Adam Falcoff
  xix.   Barltett
   xx.   Alastair Burlingham
  xxi.   Lee Vandermolen
 xxii.   Vandermolen Films

8.     All Communications with, related to, or regarding Soral, including, without limitation, those between You and each of the following individuals and entities:

    i.   Forrest Capital Partners
   ii.   Forrest Capital and Co.
   iii.   Weathervane Productions

    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
 viii.  Ross Marroso
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
  xiii.  Rafael
  xiv.  Bermudez
   xv.  Aaron McConley
  xvi.  Livia McConley
 xvii.  Richard Rossi
xviii.  Adam Falcoff
  xix.  Barltett
   xx.  Alastair Burlingham
  xxi.  Lee Vandermolen
  xxii.  Vandermolen Films

9.    All Documents and Commutations related to or regarding the May 15, 2015 Bridging Facility Agreement, attached hereto as Ex. 1.

10.   All Documents and Commutations related to or regarding the May 15, 2015 Funding Agreement, attached hereto as Ex. 2.

11.   All Documents and Commutations related to or regarding the June 22, 2015 Bridging Facility Agreement, attached hereto as Ex. 3.

12.   All Documents and Commutations related to or regarding the June 22, 2015 Funding Agreement, attached hereto as Ex. 4.

13.   All Documents and Commutations related to or regarding the July 13, 2015 Bridging Facility Agreement, attached hereto as Ex. 5.

14.   All Documents and Commutations related to or regarding the July 13, 2015 Funding Agreement, attached hereto as Ex. 6.

15.   All Communications between You and Adana.

16.   All Communications between You and Burlingham.

17.   All Communications between You and Vandermolen.

18.   All Communications between You and Vandermolen Films.

19.     All Communications between You and Aldamisa.

20.     All Documents related to or regarding agreements between You and Aldamisa.

21.     All Communications between You and London Town Plc.

22.     All Documents related to or regarding agreements between You and London Town Plc.

23.     All Documents and Communications related to or regarding Forrest Capital Partners' charter.

24.     Copies of Your tax returns for the years 2011, 2012, 2013, 2014, and 2015.

25.     All Documents and Communications related to Your use of the loan proceeds provided by Adana under the May 15, 2015, June, 22, 2015, and July 13, 2015 Bridging Facility Agreements.

26.     All Documents and Communications related to or regarding an agreement between WVP Holding and/or Weathervane and Forrest Capital Partners for Forrest Capital Partners to provide funding or a loan to WVP Holding.

27.     All Communications between You and any of the other Forrest Capital Parties.

28.     All Documents related to or regarding any and all agreements between You and any of the other Forrest Capital Parties.

29.     All applications to Wells Fargo Bank for a line of credit.

30.     All applications to Wells Fargo Advisors for a line of credit.

31.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos. ████████████████████████████████████

32.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos. ████████████████████████████████████

33.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos. ████████████████████

34.     All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos. ███████████ ████████ █████ █████

35.     All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos. ███████ █████ ████████ ████

36.     All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos. ████████

37.     All Documents and Communications related to or regarding the meeting held on October 30, 2014 at Wells Fargo Advisors.

38.     All Documents and Communications related to or regarding the meeting held on March 13, 2015 at Wells Fargo Bank.

39.     All Documents and Communications related to or regarding the meeting held on March 16, 2015 at Wells Fargo Bank.

40.     A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital Partners.

41.     A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital and Co.

42.     A copy of all articles of incorporation or organization, bylaws, and operating agreements for WVP Holding.

43.     A copy of all articles of incorporation or organization, bylaws, and operating agreements for Weathervane Productions.

44.     A copy of all articles of incorporation or organization, bylaws, and operating agreements for The JV Group.

45.     All Communications between You and Arvest Bank related to or regarding account nos. ████████████

46.     A sworn Affidavit of Authenticity referencing and exhibiting Documents produced in response to this subpoena (see attached).

### TO THE RECORDS CUSTODIAN

Copies of documents responsive to this Subpoena MUST be received in this office no later than the date indicated in the Subpoena or you may be in contempt of Court. If there is a delay for any reason, please e-mail john.couriel@kobrekim.com.

**IF THE ESTIMATED CHARGE FOR COPYING THE RECORDS EXCEEDS $250.00, PLEASE CONTACT THIS OFFICE BEFORE PREPARING THE COPIES.**

Thank you for your assistance in this matter.

Case 1:16-mc-24606-UU   Document 1   Entered on FLSD Docket 09/16/2016   Page 87 of 111
Case 1:16-cv-21562-UU   Document 76-1   Entered on FLSD Docket 08/29/2016   Page 134 of
134

## AFFIDAVIT OF RECORDS CUSTODIAN

STATE OF _____

COUNTY OF _____

 BEFORE ME, the undersigned authority, personally appeared _____
_____, who, after being duly sworn, deposes and states the following
information is true and correct according to his/her best knowledge and belief.

 1. I am over 18 years of age.

 2. It is my testimony that I am the Records Custodian for _____.

 3. The attached documents, with bates stamps/pages through _____.
are a full and complete copy of the records maintained by the _____ responsive to the
requests contained in "Exhibit A" of the Subpoena *duces tecum* issued to _____
_____.

 4. Each of the attached records was made at or near the time by - or from
information transmitted by - someone with knowledge.

 5. Each of the attached records was kept in the course of a regularly conducted
activity of and the making of such records was a regular practice of that activity.

 FURTHER AFFIANT SAYETH NAUGHT.

           _____
           Records Custodian

SWORN TO AND SUBSCRIBED before me this ____ day of _____, 2016.

Notary Seal:        _____
           Notary Public

20

# EXHIBIT 1-E

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| ADANA INVESTING, INC. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   1:16-cv-21562-UNGARO |
| WELLS FARGO BANK, N.A., et al. | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Jason Van Eman
                111 Fleetwood Place, Bartlesville, OK 74006
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Exhibit A.

| Place: Kobre & Kim LLP | Date and Time: |
|---|---|
| 2 South Biscayne Boulevard, 35th Floor | |
| Miami, Florida 33131 | 08/17/2016 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   7/25/16

| CLERK OF COURT | | |
|---|---|---|
| | OR | *John D. Couriel* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
ADANA INVESTING, INC. _____ , who issues or requests this subpoena, are:

John D. Couriel, 2 South Biscayne Boulevard, 35th fl., Miami, FL 33131 john.couriel@kobrekim.com, (305) 967-6115

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:16-cv-21562-UNGARO

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Jason Van Eman
on *(date)* July 21, 2016 .

☒ I served the subpoena by delivering a copy to the named person as follows:  Jason Van
Eman

_____ on *(date)* July 30, 2016 ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: Aug 5, 2016

_____
*Server's signature*

Claudia Dohn Inc.
P.O. Box 653633
Miami, Fl 33265
Office: 305-226-6809

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 1:16-cv-21562-UU   Document 76-1   Entered on FLSD Docket 08/29/2016   Page 70 of 134

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## INSTRUCTIONS AND DEFINITIONS

### I.   Definitions

1.   All words, terms, and phrases not specifically defined in this Exhibit A are to be given their normal and customary meaning in the context in which they are used herein.

2.   "Adana Investing" means Adana Investing, Inc. and any of its subsidiaries, affiliates, member firms, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

3.   "And" as well as "or" shall be construed both conjunctively and disjunctively as necessary in order to bring within the scope of the requests all responses which might otherwise be construed outside its scope.

4.   "Any," "all," and "each" shall each be construed as meaning any, all, and each.

5.   "Asset" means any tangible or intangible item of economic value located anywhere in the world in any form, including without limitation, and whether prepaid or deferred, any cash, income, securities, bank accounts, line of credit, accounts receivable, gifts, trademarks, patents, copyrights, goodwill, personal property, or any interest in any real property, including in any leasehold, or any ownership, membership, credit or other interest in, whether direct or indirect or legal or equitable, or any power, control or discretion otherwise with respect to the disposition of, any asset of any person.

6.   "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including, without limitation, all discussions, conversations, negotiations, meetings, telephone conversations, voicemails, letters, memoranda, notes, e-mails, text messages, iMessages, instant messages (*e.g.*, through Skype, Microsoft Lync, or any other

1

messaging program), or messages delivered through social media (*e.g.* Twitter and Facebook), and all other manner or means of transmittal of information, whether oral or written.

7.    "Concerning," "relating to," "related to," and "referring to" are used, for the purposes of these requests, as equivalent terms, each including the others.

8.    "Forrest Capital Parties" means Forrest Capital Partners, Inc., Forrest Capital and Co LLC, Weathervane Productions, Inc., WVP Holding, Inc., The JV Group, Capital B, LLC, Jason Van Eman, and Benjamin Forrest McConley as herein defined.

9.    "Document" includes, without limitation, electronically stored information ("ESI") (as defined below); all drafts; communications; correspondence; electronic mail; social media (*e.g.*, Twitter and Facebook) messages or "posts"; spreadsheets or accounting ledgers; calendars; memoranda; records; client lists; reports; books; reports and/or summaries of conversations or interviews; diaries; journals; notebooks; graphs; charts; diagrams; tables; photographs; recordings; audio and video tapes; microfilms; minutes, summaries, reports and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or other notes; checks, front and back; check vouchers, check stubs or receipts; tape data sheets, data processing cards or discs or any other written, printed, typewritten or otherwise recorded matter, however produced, reproduced, whether or not now in existence; and any paper or writing including files, contracts, correspondence, telegrams, agreements, letters, notes, manuals, employee handbooks, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after translation by You into a reasonably usable form. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. Where the electronic and hard copy versions

2

of any document are separate documents per this definition, both the electronic and hard copy versions should be produced.

10. Electronically stored information ("ESI") includes without limitation:

    a. information that is generated, received, processed, and recorded by computers and other electronic devices including, without limitation, voicemail, electronic mail, and facsimiles;

    b. internal or external web sites;

    c. output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, chat, instant message or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment;

    d. activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as but not limited to a personal digital assistant, smart phone or tablet and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein; and

    e. information, messages, or "posts" transmitted through, posted to, or stored on any social media website, including Facebook, Twitter, Linked In, XboxLive,

Foursquare, Gowalla, MySpace, Windows Live Spaces, Instagram, and Pinterest.

11.     "Including" has its standard meaning and also means "including, but not limited to" and "including, without limitation."

12.     "Aaron McConley" means Aaron McConley and anyone acting for or on his behalf.

13.     "Adam Falcoff" means Adam Falcoff and anyone acting for or on his behalf.

14.     "Alastair Burlingham" means Alastair Burlingham and anyone acting for or on his behalf.

15.     "Aldamisa" means Aldamisa Releasing, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

16.     "Arvest Bank" means Arvest Bank and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

17.     "Barlett" means Robert Barlett and anyone acting for or on his behalf.

18.     "Bermudez" means Hernan Bermudez and anyone acting for or on his behalf.

19.     "BSFG" means BSFG V1, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

20.     "Buzbee" means Anthony G. Buzbee and anyone acting for or on his behalf.

4

21.     "Capital B" means Capital B, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

22.     "Forrest Capital Partners" means Forrest Capital Partners, Inc. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

23.     "Forrest Capital and Co" means Forrest Capital and Co and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

24.     "Vandermolen" means Lee Vandermolen and anyone acting for or his behalf.

25.     "Livia McConley" means Livia McConley and anyone acting for or on her behalf.

26.     "London Town Pic" means London Town Pic Limited and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

27.     "McConley" means Benjamin McConley and anyone acting for or on his behalf.

28.     "Miller" means Dane Miller and anyone acting for or on his behalf.

29.     "Soral" means Soral, LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf, including, without limitation, Dan Koetting and Carolyn Paul.

30.     "Subject Films" means the films presently or formerly known as *Capitive, IMAX Asteroids, Royal Ice, London Town, Jane Got a Gun, Urge*, and *Grief Camp*, and referenced in the Funding Agreements attached hereto as Ex. Nos. 2, 4, and 6.

31.     "Superhuman" means Superhuman International Pty Ltd and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

32.     "Rafael" means Benjamin Rafael and anyone acting for or on his behalf.

33.     "Rossi" means Richard Rossi and anyone acting for or on his behalf.

34.     "Ross Marroso" means Ross Marroso and anyone acting for or on his behalf.

35.     "The JV Group" means The JV Group LLC and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

36.     "Van Eman" means Jason Van Eman, and anyone acting for or on his behalf.

37.     "Vandermolen Films" means Vandermolen Films, Ltd. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

38.     "Weathervane" means Weathervane Productions, Inc., and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

39.     "Wells Fargo Advisors" means Wells Fargo Advisors and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

40.     "Wells Fargo" means Wells Fargo Bank, N.A. and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

41.    "WVP Holding" means WVP Holding, LLC, and any of its subsidiaries, affiliates, members, predecessors, successors, assignees, officers, directors, employees, representatives, and partners or anyone acting for or on its behalf.

42.    "Zoch" means Paul Zoch and anyone acting for or on his behalf.

43.    "Relevant Period" refers to January 1, 2011 to the present.

44.    "You" and "Your" refers to Jason Van Eman, and anyone acting for or on his behalf.

## II. Instructions

1.  The singular of any term shall include its plural, and vice-versa.

2.  Unless otherwise specified, the requests in Section III below require the production of all responsive Documents and Communications.

3.  These requests are continuing in nature, and all responsive Documents and Communications that are created or obtained subsequent to a previous production shall be produced forthwith.

4.  Unless otherwise specified, each paragraph and subparagraph hereof and the Definitions herein are to be construed independently and not by or with reference to any other paragraph or subparagraph or Definition herein for the purposes of limiting the scope of any particular request or the subject matter thereof.

5.  All Documents and Communications produced in response to this request shall either (a) be organized and labeled to correspond with the number of the request to which the Documents and Communications are responsive, or (b) be produced as they are kept in the usual course of business and shall be presented in the file folder, envelope, or other container in which the Documents and Communications are maintained.  If Documents and Communications are

7

maintained electronically, they shall be produced in native file format with all associated metadata.

6. If a Document or Communication is redacted or not produced on the ground that it is privileged and therefore not subject to disclosure, a log containing the following information must be supplied for each:

    a. the nature of the privilege being claimed; and

    b. for Documents and ESI, other such information as is sufficient to identify the Document, including, where applicable, the type of Document, the subject matter, the date of the Document (and, in the case of e-mails, the time of transmission), the author(s) of the Document, the recipient(s) of the Document, the identity of any person who had an opportunity to review such Document and, where not apparent, the relationship of the author and the addressee to each other.

7. Each Document and Communication requested herein shall be produced in its entirety without deletion, redaction or exclusions, regardless of whether You consider the entire Document or Communication relevant or responsive; if You have redacted any portion of the Document or Communication, stamp the word "REDACTED" beside the redacted information on each page of the Document or Communication which You have redacted; any redactions to Documents or Communications produced should be identified on a privilege log in accordance with instruction 5.

8. All Documents and Communications (unless they are electronic documents produced in native format) should be "Bates" numbered sequentially with a unique number on each page, and with a prefix identifying the party producing the document.

9. If any of the below-requests cannot be responded to in full, You are to produce Documents and Communications to the extent possible, specify the reason for Your inability to produce further Documents and Communications, and state what knowledge, information or belief You have concerning the unproduced portion.

10. All Documents and Communications that cannot be legibly copied must be produced in their original form.

11. Non-identical copies of Documents and Communications, drafts of copies with annotations, and marks of marginalia shall be treated and produced as separate copies.

12. With respect to electronically stored information ("ESI"):

    a. All spreadsheets responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

    b. All other Documents and Communications responsive to these requests that are maintained in the usual course of business in electronic format shall be produced in properly unitized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

    c. All Documents and Communications responsive to these requests shall be produced with the metadata normally contained within such Documents and Communications, and any necessary Concordance load files. If such metadata is not available, each Document and Communication shall be accompanied by a listing of all file properties concerning such Document or Communication, including, but not limited to, all information concerning the date(s) the

Document or Communication was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the document.

d. Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Adana Investing, Inc.'s counsel. If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden or cost You claim is associated with the search or production of such ESI.

13. Documents and Communications in electronic format may be produced in electronic format on disk or other media in the original electronic file format(s) of the Documents and Communications.

14. If a Document or Communication that once existed has subsequently been lost, destroyed or is otherwise unavailable, provide sufficient information to identify the Document or Communication, describe its contents, explain how and when it was lost or destroyed, and identify the person who last possessed the Document or Communication.

15. If no Documents or information responsive to a particular request for production exist or are within Your possession, custody, or control, You must state so in Your response.

16. If You object to any request on the ground that it is overly broad or unduly burdensome, You are instructed to respond to the request for production as narrowed to conform to Your objection within the period allowed for a response and to state in Your response (a) how You narrowed the request and (b) the reason why You claim the request is overly broad.

17. Any reference to a person who is not an individual (including a corporation, limited liability company, proprietorship, group, association, organization, business entity, partnership, trust, limited partnership or any other artificial or non-natural entity) shall also include a reference to such person's current and former subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, operating units, partners, managers, principals, directors, officers, shareholders, employees, agents, officials, trustees, beneficiaries, administrators, representatives, associates, consultants, contractors, subcontractors, brokers, attorneys, advisors, accountants, consulting actuaries and all persons and entities acting or purporting to act on such person's behalf, unless the context provides otherwise.

## DOCUMENTS TO BE PRODUCED

1.     All Communications related to or regarding Adana, including, without limitation, those between You and each of the following individuals and entities:

    i.   Forrest Capital Partners
    ii.  Forrest Capital and Co.
    iii. Weathervane Productions
    iv.  WVP Holdings
    v.   The JV Group
    vi.  Capital B
    vii. Benjamin McConley
    viii. Ross Marroso
    ix.  Arvest Bank
    x.   Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii. Zoch
    xiii. Rafael
    xiv. Bermudez
    xv.  Aaron McConley

11

    xvi.  Livia McConley
   xvii.  Richard Rossi
  xviii.  Adam Falcoff
    xix.  Barltett
    xx.  Alastair Burlingham
   xxi.  Lee Vandermolen
  xxii.  Vandermolen Films
 xxiii.  BSFG
 xxiv.  Aldamisa
  xxv.  London Town Pic

2.     All Communications related to or regarding the Subject Films, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Ross Marroso
    ix.  Arvest Bank
    x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
  xiii.  Rafael
  xiv.  Bermudez
   xv.  Aaron McConley
  xvi.  Livia McConley
 xvii.  Richard Rossi
xviii.  Adam Falcoff
  xix.  Barltett
  xx.  Alastair Burlingham
 xxi.  Lee Vandermolen
xxii.  Vandermolen Films
xxiii.  BSFG
xxiv.  Aldamisa
 xxv.  London Town Pic

3.     All Communications related to or regarding the production of films or film financing, including, without limitation, those between You and each of the following individuals and entities:

    i.  Forrest Capital Partners
   ii.  Forrest Capital and Co.

    iii.  Weathervane Productions
    iv.  WVP Holdings
    v.  The JV Group
    vi.  Capital B
    vii.  Benjamin McConley
    viii.  Ross Marroso
    ix.  Arvest Bank
    x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii.  Zoch
    xiii.  Rafael
    xiv.  Bermudez
    xv.  Aaron McConley
    xvi.  Livia McConley
    xvii.  Richard Rossi
    xviii.  Adam Falcoff
    xix.  Barltett
    xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
    xxii.  Vandermolen Films
    xxiii.  BSFG
    xxiv.  Aldamisa
    xxv.  London Town Pic
    xxvi.  Miller
    xxvii.  Superhuman
    xxviii.  Soral
    xxix.  Buzbee

4.    All Communications with, related to, or regarding BSFG, including, without limitation, those between You and each of the following individuals and entities:

    i.  Forrest Capital Partners
    ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
    v.  The JV Group
    vi.  Capital B
    vii.  Benjamin McConley
    viii.  Ross Marroso
    ix.  Arvest Bank
    x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
    xii.  Zoch
    xiii.  Rafael
    xiv.  Bermudez
    xv.  Aaron McConley

    xvi.  Livia McConley
   xvii.  Richard Rossi
  xviii.  Adam Falcoff
    xix.  Barltett
     xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
   xxii.  Vandermolen Films

5.    All Communications with, related to, or regarding Miller, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Ross Marroso
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
   xiii.  Rafael
   xiv.  Bermudez
    xv.  Aaron McConley
   xvi.  Livia McConley
   xvii.  Richard Rossi
  xviii.  Adam Falcoff
    xix.  Barltett
     xx.  Alastair Burlingham
    xxi.  Lee Vandermolen
   xxii.  Vandermolen Films

6.    All Communications with, related to, or regarding Buzbee, including, without limitation, those between You and each of the following individuals and entities:

      i.  Forrest Capital Partners
     ii.  Forrest Capital and Co.
    iii.  Weathervane Productions
    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Ross Marroso
    ix.  Arvest Bank

    x. Wells Fargo Bank
    xi. Wells Fargo Advisors
    xii. Zoch
    xiii. Rafael
    xiv. Bermudez
    xv. Aaron McConley
    xvi. Livia McConley
    xvii. Richard Rossi
    xviii. Adam Falcoff
    xix. Barltett
    xx. Alastair Burlingham
    xxi. Lee Vandermolen
    xxii. Vandermolen Films

7.     All Communications with, related to, or regarding to Superhuman, including, without limitation, those between You and each of the following individuals and entities:

    i. Forrest Capital Partners
    ii. Forrest Capital and Co.
    iii. Weathervane Productions
    iv. WVP Holdings
    v. The JV Group
    vi. Capital B
    vii. Benjamin McConley
    viii. Ross Marroso
    ix. Arvest Bank
    x. Wells Fargo Bank
    xi. Wells Fargo Advisors
    xii. Zoch
    xiii. Rafael
    xiv. Bermudez
    xv. Aaron McConley
    xvi. Livia McConley
    xvii. Richard Rossi
    xviii. Adam Falcoff
    xix. Barltett
    xx. Alastair Burlingham
    xxi. Lee Vandermolen
    xxii. Vandermolen Films

8.     All Communications with, related to, or regarding Soral, including, without limitation, those between You and each of the following individuals and entities:

    i. Forrest Capital Partners
    ii. Forrest Capital and Co.
    iii. Weathervane Productions

    iv.  WVP Holdings
     v.  The JV Group
    vi.  Capital B
   vii.  Benjamin McConley
  viii.  Ross Marroso
    ix.  Arvest Bank
     x.  Wells Fargo Bank
    xi.  Wells Fargo Advisors
   xii.  Zoch
  xiii.  Rafael
  xiv.  Bermudez
   xv.  Aaron McConley
  xvi.  Livia McConley
 xvii.  Richard Rossi
xviii.  Adam Falcoff
  xix.  Barltett
   xx.  Alastair Burlingham
  xxi.  Lee Vandermolen
 xxii.  Vandermolen Films

9.     All Documents and Commutations related to or regarding the May 15, 2015 Bridging Facility Agreement, attached hereto as Ex. 1.

10.    All Documents and Commutations related to or regarding the May 15, 2015 Funding Agreement, attached hereto as Ex. 2.

11.    All Documents and Commutations related to or regarding the June 22, 2015 Bridging Facility Agreement, attached hereto as Ex. 3.

12.    All Documents and Commutations related to or regarding the June 22, 2015 Funding Agreement, attached hereto as Ex. 4.

13.    All Documents and Commutations related to or regarding the July 13, 2015 Bridging Facility Agreement, attached hereto as Ex. 5.

14.    All Documents and Commutations related to or regarding the July 13, 2015 Funding Agreement, attached hereto as Ex. 6.

15.    All Communications between You and Adana.

16.    All Communications between You and Burlingham.

17.    All Communications between You and Vandermolen.

18.    All Communications between You and Vandermolen Films.

19.     All Communications between You and Aldamisa.

20.     All Documents related to or regarding agreements between You and Aldamisa.

21.     All Communications between You and London Town Pic.

22.     All Documents related to or regarding agreements between You and London Town Pic.

23.     All Documents and Communications related to or regarding Forrest Capital Partners' charter.

24.     Copies of Your tax returns for the years 2011, 2012, 2013, 2014, and 2015.

25.     All Documents and Communications related to Your use of the loan proceeds provided by Adana under the May 15, 2015, June, 22, 2015, and July 13, 2015 Bridging Facility Agreements.

26.     All Documents and Communications related to or regarding an agreement between WVP Holding and/or Weathervane and Forrest Capital Partners for Forrest Capital Partners to provide funding or a loan to WVP Holding.

27.     All Communications between You and any of the other Forrest Capital Parties.

28.     All Documents related to or regarding any and all agreements between You and any of the other Forrest Capital Parties.

29.     All applications to Wells Fargo Bank for a line of credit.

30.     All applications to Wells Fargo Advisors for a line of credit.

31.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

32.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

33.     All Communications between You and Wells Fargo Bank related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos. ▮▮▮▮▮▮▮▮▮▮▮▮

17

34.   All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital Partners, including without limitation, account nos. ████████████

35.   All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of Forrest Capital and Co., including without limitation, account nos. ████████████

36.   All Communications between You and Wells Fargo Advisors related to or regarding any accounts in the name of McConley or with McConley as an authorized signatory, including without limitation, account nos. ████████████

37.   All Documents and Communications related to or regarding the meeting held on October 30, 2014 at Wells Fargo Advisors.

38.   All Documents and Communications related to or regarding the meeting held on March 13, 2015 at Wells Fargo Bank.

39.   All Documents and Communications related to or regarding the meeting held on March 16, 2015 at Wells Fargo Bank.

40.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital Partners.

41.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Forrest Capital and Co.

42.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for WVP Holding.

43.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for Weathervane Productions.

44.   A copy of all articles of incorporation or organization, bylaws, and operating agreements for The JV Group.

45.   All Communications between You and Arvest Bank related to or regarding account nos. ████████████

Consulting Agreement
WeatherVane & Edmund Ross Marroso Jr.
February 5th 2015

This Consulting Agreement ("Agreement") is entered into on February 5th 2015 (the "Effective Date"), by and between Edmund Ross Marroso Jr. ("ERM") and WeatherVane Productions Inc., a Nevada Corporation, and it's president Jason Van Eman (WVP) (collectively **"the parties"**). WVP has requested the consulting services of ERM in assisting with the facilitation and development of various projects / ventures and the facilitation of investments into these projects and ventures directly or indirectly via WVP and its financial partner Forrest Capital Partners (FCP) and its principle Ben McConley.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

**DEFINITIONS**:

**Relationship Of Parties:** It is understood by the parties that ERM is an independent contractor with respect to WVP, Inc., and not an employee of WVP, Inc. WVP, Inc. will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of ERM.

**Compensation**: An agreed split of all monetary or in-kind payments, revenues, and payments, monies, fees received by WVP from all sources derived from the projects that have been successfully introduced and financed through WVP and its financial partner FCP. This includes but is not limited to, all Executive Producer fees, finder's fees, profit participation monies, payments provided to WVP from FCP, and all monies returned or paid to WVP by FCP or other companies, organizations, entities that WVP receives revenue, monies or payments from. WVP nor its authorized agents will take any action to mitigate or circumvent any revenues to avoid payment of the compensation. (Exhibit B.)

WVP will pay ERM a consulting fee (fee) equal to 50% of the total compensation yielded (**compensation**) by WVP for its participation and involvement with the projects and ventures for each project ERM directly introduces (introductions) to WVP or FCP; introduces to FCP jointly with WVP; or on any project or venture that WVP or FCP has requested ERM to consult on. If ERM is requested to consult on a preexisting relationship or project the fees will be defined on a case by case basis dependent on the specifics of each deal structure (See appendix "A" for partial entity list) (See appendix "B" for partial compensation declarations)

WVP will pay ERM the consulting fee within seven calendar days of receipt of compensation or any proportion thereof to the entity of ERM's choice. In the event compensation is remitted to an alternative entity, ERM will notify WVP in writing and any payments will count directly towards the total compensation payments required of WVP.

**Introductions**; Also to be understood as, "introduced", and "introduces": All persons, entities, organizations, companies, or ventures (collectively "entities") not known by or not readily or currently in communication with WVP or FCP that become known through to the involvement and efforts of ERM.

**Expense Reimbursement:** ERM shall pay all "out-of-pocket" expenses, and shall not be entitled

initials: *JMV* /_____

Consulting Agreement
WeatherVane & Edmund Ross Marroso Jr.
February 5th 2015

to reimbursement from WVP, Inc.

**Term:**  This agreement will be in effect for a period of 5 years and will automatically renew for a term of two years at the expiration of this agreement unless either parties agree in writing to allow this agreement to expire.   In the event of the expiration of this agreement, all rights and obligations vested hereunder shall not be effected or altered.

**Injuries:** ERM acknowledges ERM's obligation to obtain appropriate insurance coverage for the benefit of ERM (and ERM's employees, if any). ERM waives any rights to recovery from WVP, Inc. for any injuries that ERM (and/or ERM's employees) may sustain while performing services under this Agreement and that are a result of the negligence of ERM or ERM's employees.

**Indemnification:** ERM agrees to indemnify and hold harmless WVP, Inc. from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against WVP, Inc. that result from the acts or omissions of ERM, ERM's employees, if any, and ERM's agents. WVP, Inc. agrees to indemnify and hold harmless ERM from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against ERM that result from the acts or omissions of WVP, Inc., WVP, Inc.'s employees, if any, and WVP, Inc.'s agents. Parties shall be excused from performance, and shall not be in default in respect of any obligation hereunder to the extent that the failure to perform such obligation is due to a Natural, Financial or Political Force Majeure Event.

**Confidentiality:** WVP, Inc. recognizes that ERM has and will have the following information:
-   inventions - prices - costs - future plans - business affairs - trade secrets - customer lists - copyrights - Financial agreements and or capital exchanged internal WVPs business - and other proprietary information (collectively, "Information") which are valuable, special and unique assets of WeatherVane Productions, Inc. and need to be protected from improper disclosure. In consideration for the disclosure of the Information, ERM agrees that ERM will not at any time or in any manner, either directly or indirectly, use any Information for ERM's own benefit, or divulge, disclose, or communicate in any manner any Information to any third party without the prior written consent of WVP, Inc. ERM will protect the Information and treat it as strictly confidential. A violation of this paragraph shall be a material violation of this Agreement and void said terms.

**Confidentiality After Termination:** The confidentiality provisions of this Agreement shall remain in full force and effect after the termination of this Agreement.

**Notices:** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail, postage prepaid, addressed as follows:

IF for WVP, Inc.:

WeatherVane Productions, Inc.
Jason Van Eman
President
PO Box 3524
Bartlesville, Oklahoma 74006

initials: *JMV* /_____